# Appeal of Clarke et al.

1. A bill in equity alleged that the plaintiffs were at various times members of a certain co-partnership; that by the articles of agreement any partner had the right to assign his interest therein, the assignee succeeding to the rights and liabilities of the assignor; that the assignees and the remaining partners were thereupon bound to exonerate the assignor from all debts contracted before or subsequent to the assignment, and to apply the assets of the firm to the payment of the then existing liabilities; that plaintiffs sold their interests in said firm at different dates to various purchasers; that the assets of the firm at the time of the assignments were sufficient to pay the debts of the firm then existing, but that the defendants (being the assignees and remaining partners) had failed to so apply them and had converted them to their own use; that plaintiffs were consequently obliged to pay various sums to the creditors of the firm. The bill prayed that an account be taken of the claims against said firm, which have been paid by the plaintiffs; also of the claims against said firm which are still unpaid, and of the relative liability therefor of said defendants and plaintiffs and each of them, and to each other; that the defendants be ordered to reimburse the plaintiffs for the sums so paid by them and to exonerate them from all unpaid claims against the firm; that an account be taken of the assets of the firm, and that the defendants be ordered to transfer and deliver them to a Receiver; also, general relief.

*Held*, that a court of equity had no jurisdiction; that the plaintiffs had complete and adequate remedy at law.

2. On the hearing of said bill it further appeared that at the time of its filing a partnership bill was then pending, filed by other members of the firm and involving substantially the same questions; that a Receiver had been appointed thereunder and the assets placed in his hands.

*Held*, that such facts constituted a further reason for the dismissal of the bill.

October 27th, 1884.    Before MERCUR, C. J., PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.   GORDON, J., did not sit.

APPEAL from the Court of Common Pleas No. 1 of *Allegheny county :* Of October and November Term, 1883, No. 229.

This was an appeal by Cyrus Clarke et al., from a decree of the said court, dismissing a bill in equity, wherein the said Clarke et al. were plaintiffs and Andrew Ackley et al. were defendants.

The bill alleged :

1st. That a co-partnership was formed on January 2d, 1866, for carrying on the banking business in the city of Pittsburgh, under certain articles of agreement, in which co-partnership plaintiffs and defendants were at various times partners.

2d. That under said articles any partner had the right to sell and assign his interest in said partnership at any time, the assignees of such interest succeeding to all the rights and liabilities of the assignor.

3. That sales and assignments were made by various partners at various times.   Exhibit B, attached to the bill, contained a true and correct list of all persons who were partners in the firm at any time after January 1st, 1872, the number of shares held by each, and the time when such shares were acquired, and if sold, the dates of such sales.

4th. That when any partner sold his interest and the same was transferred upon the books of the firm to the purchaser, the remaining partners and said purchaser were bound to exonerate him from all debts then or thereafter contracted, and to apply the assets of the firm, so far as required, to the payment of the then existing liabilities.

5th. The plaintiffs were partners in said firm, but sold their interest therein at various dates, [subsequent to January 1st, 1872] and the same were transferred upon the books of the firm to the purchasers thereof.

6th. That the assets of the said firm were sufficient to pay the debts of the firm existing at the time plaintiffs transferred their interest therein, but the defendants (being partners in

said firm) misapplied the same and converted them to their own use.

7th, 8th and 9th. That the defendants did not pay all the debts of the firm, and plaintiffs were obliged to pay nearly $23,000 on account thereof; some of these debts were paid after suits had been brought and judgments recovered against plaintiffs, but the greater part were paid without suit, in order to save costs, plaintiffs being satisfied that the claims were valid and unless paid suits would be brought and judgments recovered; the claims so paid were for deposits; some of them were made while plaintiffs were partners in the firm; most of them, however, were made after plaintiffs had sold and transferred their interests, but being made by persons who were depositors before such sales and had no notice thereof, plaintiffs were held liable therefor.

The bill prayed:

First. That an account may be taken of all and every the debts and demands which were and are due from the said co-partnership which have been paid by your orators, and of any and all claims against said co-partnership still unpaid, the time when the same accrued, and the persons liable therefor, the relative liability of said defendants, and each of them, and to each other. That upon the making of said account and adjustment of liabilities as aforesaid, it may be adjudged, ordered and decreed that said defendants shall repay to plaintiffs, and each of them, all moneys paid on the above mentioned claims in accordance with their respective liability therefor, and to exonerate said plaintiffs from all claims and demands against said co-partnership.

Second. That an account may be taken of all property, rights, credits and assets of said co-partnership on the 1st day of January, 1872, and of the disposition made of the same, and that said defendants, and each of them, may be decreed to transfer and deliver to the receiver of said co-partnership, any and all the said property, rights, credits and assets of said co-partnership, in the hands, custody or control of said defendants, or either or any of them.

Third. That the plaintiffs may have such other and further relief in the premises as the nature of this case may require.

The defendants filed an answer, which denied the allegations contained in paragraphs 1 to 9 of the plaintiffs' bill, and that the plaintiffs and defendants were at any time partners in the said firm. It alleged that upon the settlement of the accounts between the plaintiffs and defendants, a balance will be found to be due the respondents from the plaintiffs and further charged " that a bill in equity was filed at No. 150, of January Term, 1880, of the Court of Common Pleas, No. 2, of Alle-

gheny county, Pa., by J. T. Stockdale, trustee, etc., *vs.* M. Maginn et al., praying a settlement of the partnership of the affairs of the Pittsburgh Savings Bank, and an adjustment of the accounts of the various co-partners as between each other; that B. C. Christy, Esq., was appointed receiver of the assets of the said firm, and is now in possession and custody thereof, as such officer of the said Court of Common Pleas, No. 2; that the controversy in both suits is legally and substantially the same."

The answer therefore prayed that the plaintiffs' bill be dismissed for want of jurisdiction.

The case was referred to Christopher Magee, Esq., as examiner and Master, who after taking testimony, found the facts to be substantially as alleged in the plaintiffs' bill. His findings of law were as follows:

The defendants claim that if the plaintiffs are wronged they have, upon their own showing in their bill, a full, adequate and complete remedy in actions at law. The plaintiffs claim that equity has jurisdiction on three grounds, to wit:

First. On the account of the prayer in the bill for exoneration from the indebtedness of the bank still remaining unpaid. While the plaintiffs are liable to the creditors for all these debts, still as between the plaintiffs and defendants, the defendants are bound to pay said debts and keep the plaintiffs clear. The law presumes that every man will do that which he is legally bound to do, and we have no right to presume that the plaintiffs will have to pay any of said indebtedness; if they do it will then be time for them to enforce their remedy against the defendants. A decree for exoneration would not relieve the plaintiffs from suits by the creditors, but would merely determine who should reimburse the defendants in such suits if they should be compelled to pay any of said debts; this can be determined as well in proceedings at law when the threatened danger arises, if it should arise. If equity has already acquired jurisdiction from other sources, perhaps it would not be amiss to go into the question of exoneration, but I do not think that question is sufficient to give jurisdiction to a Court of Equity originally.

Second. Plaintiffs claim also that the case is properly within the jurisdiction of the Court of Equity, owing to the multiplicity of suits it would give rise to for each of the plaintiffs to insist upon his rights in actions at law. Equity jurisdiction in Pennsylvania only exists where it is given by statute, and I fail to find any statute giving a number of persons power to join their cases and sue in equity, because their claims would give rise to numerous actions if asserted at law, even when the claims are against one defendant, much less where they

are against numerous defendants, liable to different ones of the plaintiffs, and in different amounts. Under the English equity practice, persons who are threatened by a multiplicity of actions at law may file a bill to prevent them; but this can only be done when the actions threatened are by parties having a common claim against all the persons filing the bill together, and in the same right: Bispham on the Principles of Equity, 466. Therefore, I am of the opinion that that principle of equity which in the English practice gives jurisdiction owing to multiplicity of suits does not apply in this state, and that if it did it could not give equity jurisdiction in this case.

Third. The principal ground of equity jurisdiction insisted upon by the plaintiffs, is the Act of the Legislature giving the Court of Common Pleas jurisdiction in the regulation of the affairs of partnerships and corporations. I think this Act is clearly intended to give the courts such equity powers in regard to partnerships and corporations, as was exercised in the English Courts of Chancery in relation to the same matters, and no other powers. This would allow them at any time during the continuance of the partnership, or at its dissolution, upon the demand of any partner, to entertain a bill for an account between the partners, provided no account had been stated or agreed upon between the partner claiming his right to an account and the defendants; if there had been an account agreed upon, as far as the plaintiff was concerned, it would be a full defence to the bill, and no account could be taken by the court. The plaintiffs claim that when they went out of the partnership, each of them surrendered all his claim to the original stock and all the accrued profits of the partnership to his successor, and the other partners took his successor in his place, and the vendee and the other parties released and agreed to indemnify the vendee from all liability for the past as well as subsequent indebtedness of the firm; or in other words, when each of the plaintiffs left there was an agreement between him and all of the defendants that as far as their partnership transactions were concerned neither of them owed or should thereafter owe the other anything, the defendants assuming all the debts of the partnership. This position I think is correct, and I think the vendee and the remaining parties assumed the payment of all debts of the partnership, irrespective of whether or not there were then sufficient assets belonging to the firm to pay all the debts then outstanding. If such is the case the plaintiffs are not entitled to accounts to determine whether the firm had sufficient assets to pay the indebtedness existing at the time they sold their stock respectively,

and can only claim a general account as between partners. Could they have claimed an account if they had never been compelled to pay anything after they sold their stock? I think it clear that they could not, for their manner of going out of the firm and the agreements, express and implied, connected with it, clearly amounted to a settlement and statement of accounts between each retiring partner and the remaining partners, which would be a bar to any subsequent demand for an account. The only question remaining then is, did the fact that they were compelled to pay the debts of the firm give them the right to demand an account in equity. All they can demand under any circumstances, is reimbursement of the amounts paid by them and exoneration from future payments. This would consist of mere matters of charge on one side, and in such a case a bill in equity will not lie, the remedy being an action at law. See Gloninger v. Hazard, 42 Pa. St. Rep. 389; Passayunk Bldg. Assn's Appeal, 83 Id. 441; Grubbs' Appeal, 90 Id. 228. Therefore, I am of the opinion that each of the plaintiffs would have a full, adequate and complete remedy at law against the defendants upon their promises (made when the plaintiffs sold their stock respectively) to indemnify them from the indebtedness of the bank.

Exceptions filed to this report by the plaintiffs were dismissed by the court and a decree entered dismissing the bill for want of jurisdiction. The plaintiffs thereupon took this appeal, assigning as error the entry of the said decree.

*Geo. W. Guthrie*, (with him *Jacob F. Slagle, James H. Reed* and *Josiah Cohen*) for the appellants.—Under the statutes, the Courts of Pennsylvania have the power and jurisdiction of Courts of Chancery, so far as relates to " the supervision and control of partnership ;" the " settling partnership accounts ;" the " care of trust moneys and property," and the " affording specific relief." We submit that the bill in this case can be sustained under any one of these heads.

In the first place, the partnership agreement and the settlement of the partnership accounts are the very base of the controversy. The relative rights and duties of the plaintiffs and defendants between themselves depend upon the partnership which at one time existed between them. The supervision and control of partnerships and the settlement of their accounts are peculiarily within the province of a court of equity. The fact that the partnership relation between the plaintiffs and defendants has been dissolved certainly will not of itself prevent the filing of the bill. Indeed, it was at one time doubted whether a bill for an account could be filed

during the continuance of the partnership unless the bill showed cause for and prayed a dissolution.

The court had also jurisdiction of this bill on the ground of trust. The assets of the firm constituted a trust fund for the payment of its debts, and the defendants were bound to account therefor. Peters *v.* Horbach, 4 Barr 134; Guillou *v.* Peterson, 7 W. N. C. 268. The assignment of an interest in a firm passes to the assignee a right to a share of what may remain after payment of debts. The fact that the assignees and remaining partners have the custody and control of the assets is immaterial. If defendants have misused and perverted the trust funds, as charged in the bill, they are accountable to us in equity.

We are likewise entitled to equitable relief to prevent circuity of action, and to afford us a specific remedy. As between the plaintiffs and defendants, the liability of plaintiffs for the debts paid is secondary only—certainly so as to all debts contracted after their retirement from the firm—and also, we submit, for those contracted before. The defendants were bound to pay these debts as they matured; they failed to do so, and suspended business without making provision for them. Suits were brought against plaintiffs for some of these debts, and judgments recovered against them. The right of plaintiffs to equitable relief was then complete; they were not bound to stand idly by until suits were brought against them, heavy costs incurred, and their property sold on executions—particularly when the judgments in such cases would be conclusive upon them, but would not be even *prima facie* evidence in an action over against the defendants. Plaintiffs had a right to know what debts were still outstanding, for which they could be held liable, when they were contracted, and who, if any, of the defendants were liable to them therefor. Moreover, the debts being due and unpaid, and plaintiffs' liability therefore fixed, they had a right to compel such of the defendants as were liable therefor, either to pay the same or furnish them with the means to do so. This relief could be obtained through equity, and in no other way. The books and accounts of the firm were in the custody and control of the defendants, and they knew what claims were outstanding, and the character of them. The right of a surety whose liability has become fixed, to compel exoneration from his principal, even before actual payment of the debt, is clearly established: Beaver *v.* Beaver, 11 Harris 170; Ardesco Oil Co. *v.* N. A. Mining & Oil Co., 16 P. F. S. 381; Heritage *v.* Bartlett et al., 8 W. N. C. 26; Brant on Suretyship, § 152 and note; De Colyer on Suretyship, pp. 308 and 324; Baylies on Sureties, p. 350, *et seq.* This right is

enforced by courts of equity, both under their power to prevent frauds, and their power to enforce specific performance.

*A. M. Brown* and *Doty,* (with them *Patterson, Kennedy, Geyer, Miller, Reardon, Whitesell & Son, Speer, Galbreth,* and *Magee,*) for the appellees.—The appellants do not claim as partners, but as creditors. The bill discloses the ordinary case of a partner retiring ·from a partnership, leaving the assets with the remaining partners upon their agreement to indemnify him from the debts thereof. In such case, a complete and adequate remedy can be had at law and a bill in equity will not lie : Scott's Appeal, 7 Norris 173; Frow's Estate, 23 P. F. S. 459; Bullitt & Fairthorne *v.* Church, 2 Casey 108 ; Clark's Appeal, 62 Pa. St. 447 ; Gloninger *v.* Hazard, 42 Pa. St. 389; Appeal of Passyunk Ass'n., 83 Id. 441 ; Grubb's Appeal, 90 Id. 228; Appeal of Pitts. & Conn. R. R. Co., 99 Id. 177.

Mr. Justice PAXSON delivered the opinion of the court January 5th, 1885.

The only question here is one of jurisdiction. The court below dismissed the plaintiffs' bill upon the ground that their proper remedy was by an action at law. From that decision this appeal was taken.

The bill sets forth, inter alia, that the complainants were at one time members of a copartnership known as "The Pittsburgh Savings Bank of Pittsburgh;" that under said articles any partner had the right to sell and assign his interest in said partnership at any time, the assignee of such interest succeeding to all the rights and liabilities of the assignor ; that when any partner sold his interest, and the same was transferred upon the books of the firm to the purchaser, the remaining partners and said purchaser were bound to exonerate him from all debts then or thereafter contracted, and to apply the assets of the firm, so far as required, to the payment of the then existing liabilities ; that the plaintiffs had sold their respective interests in the firm at various dates, as shown by Exhibit B attached to the bill, and the same were transferred upon the books of the firm to the purchasers thereof; that the assets of the firm were sufficient to pay the debts of the firm existing at the time plaintiffs transferred their interests therein, but the defendants (being partners in said firm) misapplied the same and converted them to their own use ; that the defendants did not pay the debts of the firm, and plaintiffs were obliged to pay nearly $23,000 thereof. The prayers for relief are : 1st, that an account may be taken of all the claims against said firm

which have been paid by complainants; 2d, of all claims against said firm which are still unpaid, and of the relative liability of said defendants, and each of them, and to each other; that the defendants be ordered to repay to the plaintiffs, and each of them, all moneys paid by them, and to exonerate said plaintiffs from all claims and demands against said partnership; 3d, that an account be taken of the assets of the firm as the same existed on the 1st day of January, 1872, and the disposition made of the same, and that defendants be required to deliver the said assets to the receiver of said partnership; and 4th, general relief.

The answer of the defendants avers, inter alia, that a bill in equity was filed at No. 150 of January Term, 1880, of the Court of Common Pleas No. 2 of Allegheny County, by J. T. Stockdale, Trustee, *v.* M. Maginn et al., praying a settlement of the partnership affairs of the Pittsburgh Savings Bank, and an adjustment of the accounts of the various co-partners as between each other; that B. C. Christy, Esq., was appointed receiver of the assets of said firm, and is now in possession and custody thereof as such officer of the said Court of Common Pleas No. 2; and that the controversy in both suits is legally and substantially the same.

If this were a partnership bill it would clearly come within the jurisdiction of a court of equity, but it is not. We have merely the case of a partner who has sold out his interest in the firm, with an agreement that he shall be exonerated from all the firm debts, present and future, who has been compelled to pay certain debts of the firm, and who files a bill claiming to be reimbursed for such payment. That there are a number of partners in the same position can make no difference in the principle.

I take it to be clear that when one partner sells out in this manner he ceases to have any interest in the assets of the firm, or any right to control them. His assignee and the remaining partners have full dominion and control over the partnership property, and may apply it in the conduct of the business as the exigencies thereof may require. What the retiring partner has is his contract, or agreement of indemnity, as the case may be. If he is compelled to pay a debt of the firm he may sue at law upon such indemnity, and the precise measure of his damages is the amount he has been compelled to pay. For this he needs no account; it is no affair of his what any other retiring partner has been compelled to pay, and he has no standing to call for an account between the members of the firm remaining after he parted with his interest. Discovery is not needed, and is not prayed for. There are no mutual accounts which need to be sifted; hence

the principle cited from Gloninger v. Hazard, 6 Wright 389, that there is no doubt of the concurrent jurisdiction of equity with courts of law, "in matters of account where the accounts are mutual and complicated, and also where they are all on one side but discovery is sought and is material to the relief," has no bearing. The law is good, but there are no facts to apply it to.

Aside from this there was a partnership bill pending when this bill was filed, which is still undetermined, and the assets of the firm are now in the hands of a receiver. Under that bill an account will or may be taken, and all equities between the partners and rights of creditors adjusted in an orderly manner. It would be an anomaly in equity practice to sustain this as a partnership bill with that bill pending.

An attempt was made to sustain this bill upon the ground of trust, and Peters v. Horbach, 4 Barr 134, and Guillou v. Peterson, 7 W. N. C. 268, were cited in support of this proposition. Neither case sustains it. Peters v. Horbach was an action of account render, and it appeared that a dividend had been declared by a partnership, and the partner holding the share of an absent member under a resolution of the company paid it over in extinguishment of a debt due the company by another partner, who promised to settle with the absent partner, and it was held that all the members present not dissenting from the resolution were jointly liable for the amount of the dividend. Guillou v. Peterson was a case of a partnership to whom a trustee, who was also a partner, fraudulently loaned the assets of the trust estate, which were lost by the firm in the course of its business, and it was held that the partnership were liable to the trust estate for the value of the securities so lost, the partners having knowledge that the securities belonged to the trust estate.

This brief reference to those cases is sufficient to show that they are not authority for the contention of the appellees. The latter may perhaps be said to be trustees in the same sense that the maker of a promissory note is a trustee for the holder thereof, but these are not the kind of trusts which give jurisdiction to courts of equity in Pennsylvania. In all such trusts the remedy at law is ample.

The position of appellants is that of creditors, not of partners : Scott's Appeal, 7 Norris 173 ; Frow's Estate, 23 P. F. S. 459 ; and in Bullitt v. Methodist Episcopal Church, 2 Casey 108, it was held that where the retiring partner stipulated that the remaining partner should pay the debts of the firm, a suit at law on the contract was his appropriate remedy.

We are of opinion that the plaintiffs have an adequate remedy at law : as was said in Clark's Appeal, 12 P. F. S. 447,

" It was never intended to take away the common law right of trial by jury where a wrong done by a party can be redressed by it."

The court below was right in denying its jurisdiction.

The decree is affirmed, and the appeal dismissed at the costs of the appellants.