## Shamburg *versus* Abbott et al.

1. Whenever one person is legally bound to pay the proper debt of another, the former in a certain sense occupies the position of surety for the latter; and if the surety pays the debt, he has a right of action against his principal. This right of action may sometimes be asserted by an independent suit, and at other times in the form of subrogation.

2. Where one, by reason of his having been a partner, and not having given notice of his withdrawal, becomes liable for debts contracted by the partnership after his withdrawal, but which as between himself and the partnership, the latter were bound to pay, and being thus liable pays the same, he may recover the amount so paid in an action of *indebitatus assumpsit* against the remaining partners.

February 3d, 1886.  Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Crawford county:* Of January Term, 1886, No. 227.

Assumpsit by Garson Shamburg against W. H. Abbott, George Moody, W. W. Thompson et al., late partners doing business under the firm name of the Citizens Bank, to recover the sum of $14,250.32, which he paid to the creditors of said firm on account of debts of said firm contracted after his withdrawal from said firm, and for which he had become liable to said creditors by reason of his having been a partner and not having given notice of his withdrawal. The pleas were, *non assumpsit, non assumpsit infra sex annos,* payment with leave, and as to some of the defendants the additional plea of bankruptcy.

The following facts appeared on the trial of the case before CHURCH, P. J.:

In the year 1870 the defendants formed a co-partnership association under the name and style of " The Citizens' Bank," for the purpose of transacting a general banking business. In June, 1871, the plaintiff purchased certain shares in the association, amounting to the sum of two thousand dollars, and thereby became a member of the association, and so continued and was so advertised until the 23d day of December, 1872, when he sold his interest to one of the other members. The association thereafter continued the banking business without any apparent change of membership until the month of October, 1873, when it became insolvent and closed its doors. The plaintiff, having neglected to give such notice as was requisite to relieve him from liability as a partner for debts contracted by the association after his withdrawal, was made a co-defendant with the remaining members in many suits brought by depositors and other creditors in the Common Pleas of Crawford county.

To these suits Shamburg made defence that he had withdrawn from the association on the 23d of December, 1872, and was not liable for debts contracted after that date or before he became a member. The judgment of the Common Pleas was against him upon both points. One of the suits, viz.: that of Ruggles *v.* Shamburg and others, doing business as The Citizens' Bank, reported in 2 Norris, 148, as Shamburg *v.* Ruggles, having been removed to the Supreme Court, the judgment of the Common Pleas was reversed as to debts contracted before Shamburg became a member of the association, but affirmed as to debts contracted after his withdrawal.

[Shamburg *v.* Abbott.]

The decision upon the latter point, which alone is material here, was put on the ground of Shamburg's failure to give notice of his withdrawal.   After this decision Shamburg made the best terms he could with the creditors of the association who had brought suits, and others who threatened to sue, and in so doing paid out on account of debts contracted after his withdrawal the sum of $14,250.32, which payments so made were, to the extent thereof, in relief of the defendants. To recover the money so paid the plaintiff herein filed a bill in equity against the defendants herein, setting forth substantially the same facts relied upon in the present suit, and in addition the fact that the association had large assets, and no account had ever been rendered of their disposition.   To this bill the defendants demurred, and for cause of demurrer said, among other things, "Because it appears from said bill that the plaintiff sold and transferred all his interest in the alleged co-partnership on the 21st day of December, 1871, and from and after that time was not a co-partner therein or interested in the business, accounts or assets of the same, and the plaintiff has no just right or claim to any discovery, account or relief from the defendants, or either of them, by reason of any thing appearing in said bill."   The demurrer was sustained, and thereafter the present action of *assumpsit* was brought to recover the same moneys.

The plaintiff having proved his membership in the partnership from June, 1871, until December, 1872, his sale of his interest therein to one of the partners at the latter date and compulsory payment of debts of the association contracted by it after his withdrawal, rested, and thereupon the court, upon motion of the defendants, ordered a nonsuit.

The defendants were sued as partners, and there was no denial of the partnership by affidavit or otherwise.   The rules of court in such case dispense with proof of partnership.

A motion was made by the plaintiff to take off the nonsuit which the court overruled, and allowed the nonsuit to stand. In so doing the court filed the following opinion :

The plaintiff brought suit against the defendants as partners doing a banking business, and as his cause of action avers that he was at one time a fellow partner of the several defendants, and as such was compelled by law to pay a large amount of the indebtedness of the banking partnership to its creditors, and therefore claims from his several co-partners to be made good for such payments.

The plaintiff claims, however, that although he was held by the courts to be a partner with these defendants named, as to third parties doing business with the bank, yet he was not

held and could not be held such partner as between the parties themselves. He therefore claims as a surety rather than as a co-partner seeking reimbursement, on the ground that, whatever his situation might be, whether surety or co-partner, plaintiff could not recover in this form of action, and under the present pleadings, or at law, he was non-suited at the conclusion of his evidence.

I have not the pleadings before me as I write, nor was reference made to them in the argument, hence I have no conclusion on their completeness or incompleteness. Yet it is plain to me that the plaintiff cannot recover from these defendants in this form of action. His remedy, if any he has, is in equity.

He has sued a dozen or a score of individuals, alleged co-partners, in *assumpsit*, and though he may have proved with more or less distinctness that each and every of the defendants had been engaged as co-partners in the banking business, and that he himself had been compelled, either after litigation ended, or to avoid litigation threatened, to pay a large amount of the indebtedness of the banking firm, yet he offered no evidence whatever, as of course he had none, to show any express promise or undertaking on the part of even one of the defendants to pay him, the plaintiff, any portion of the sum so alleged to have been paid by him, hence their liability or the liability of any one of them depends solely on the implied obligations arising out of the partnership relation.

But it is settled too well in this State to admit of controversy that one partner cannot maintain *assumpsit* against his co-partners to recover the excess of his advances unless there has been a settlement of the accounts and a balance has been struck. This rule applies whether the subject-matter or property of the partnership has ceased to exist or not: Leidy *v.* Messinger, 71 Pa. St., 177. As is well said in the cited case, "It would beget an intolerable multiplicity of suits to allow one partner to sue another for contribution as often as he paid moneys or made advances on account of the partnership."

To prevent such burdensome litigation the law has wisely provided that the partnership accounts shall be settled in one proceeding, either account render or by bill in equity; and that in the absence of an express promise to repay, *assumpsit* will not lie by one partner against another to recover for advances until there has been a settlement of the partnership accounts. To the same effect will be found the cases of Klase *v.* Bright, 71 Pa. St., 186; McFadden *v.* Hunt, 5 W. &

S., 468,. and many others which it were a waste of labor to cite.

. In the case before us it appeared in evidence, or at any rate it was known officially to the court from its own records, that some, and indeed many, if not all, of the defendants have paid out various and large sums of money from time to time in paying the creditors of the banking partnership, and possibly in the adjustment of the whole accounts recompense might have to be allowed to them—some more, some less,—and not only from the plaintiff, but from each other.

It is most absurd to say that all these various intricacies and adjustments could be settled in this common law action of *indebitatus assumpsit.* The question has passed beyond the realm of argument.

But the plaintiff claims that he was simply a surety for the co-partnership as an entirety, and as such, having been compelled in the ways hereinbefore pointed out, to pay many of its debts, or a large percentage thereof, he is entitled to contribution from and to recover against the whole co-partnership as his principal, and in this common law action of *assumpsit.* He seeks to establish his position as surety in this way : That he, being a partner at one time with defendants, sold and transferred in good faith his share in the co-partnership to one of the members thereof ; that thereby he became released from the debts of the firm as to all the remaining partners themselves, even if not as to third persons dealing with them.

The singular and somewhat unique nature of the banking co-partnership associations, of which these defendants' bank was one, has been frequently commented upon by the courts, but we have here very little to do with it further than to say that its articles of association provided for the assent and consent of the members to any sale or transfer of the share or interest of one member to another, or to a third person, and lacking which the same would be of none effect.

That assent did not appear in evidence in the case and presumably did not exist. Hence it would appear that such sale or attempted sale did not have the effect of dissolving the contractual relations between the plaintiff and these defendants, his co-partners, unless indeed it was so in regard simply to the plaintiff's vendee of his share interest.

If this be so, the plaintiff could not have contribution or indemnity from the defendants *en bloc* as his principals, but must seek it as an equitable right of contribution between partners, but this, as we have seen, he cannot obtain on the common law side of the courts in this form of action.

. If the plaintiff's purchaser of his share interest agreed to

indemnify and save harmless the plaintiff from the past or future debts of the firm, such agreement might be enforced against such purchaser in an ordinary action of *assumpsit,* or other proper action, and recovery might be had against him on an implied contract of indemnity if no express agreement existed.

The relation of principal and surety might arise between the parties growing out of the contract of purchase and sale alone. But that is not this case. The plaintiff has sued the whole partnership. This we have shown he cannot do successfully, because,

*First.*—If a partner, his remedy is at equity.

*Second.*—If not a partner, he holds the contractual relation of surety only with the vendee of his share interest and with no one else.

The nonsuit was properly granted, and the motion to take off the nonsuit is refused.

Judgment was entered and the plaintiff thereupon took this writ assigning for error the refusal of the court to take off the nonsuit.

*C. Heydrick (A. G. Church* with him), for plaintiff in error. —Shamburg was practically surety for the defendants : Brown *v.* Black, 15 Norris, 482.

He was entitled to subrogation : Cottrell's Appeal, 11 Harris, 294 ; Scott's Appeal, 7 Norris, 173. Wright *v.* Machine Co., 1 Norris, 80.

In most of these cases the persons paying the debts of others were permitted to enforce against the principal debtors judgments or other obligations which they had paid and satisfied. This is, perhaps, what is usually understood by subrogation. But the principle contended for and recognized in all the cases is something more than the mere matter of form which the remedy shall take. It is a matter of substance. It is the right to all the remedies which were at the command of the creditor whose debt has been paid, which includes an action for the money so paid. Such is the doctrine of Taylor *v.* Gould, 7 P. F. S., 152 ; Hogg *v.* Longstreth, 1 Out., 255.

*Joshua Douglass (Guthrie* and *Byles* with him), for defendant in error.—The numerous authorities cited by the learned counsel for the plaintiff contain excellent expositions of the law on the subjects to which they relate, but they have no relevancy to the questions involved in this case. Not one of them contravenes in the least degree the doctrine of the court below, the authorities cited by his Honor, or questions their correctness.

Mr. Justice STERRETT delivered the opinion of the court February 15th, 1886.

In June, 1871, plaintiff became a stockholder of "The Citizen's Bank," an unincorporated association or copartnership theretofore formed for the purpose of transacting a general banking business. The stockholders, in their legal relations to the public and to each other, were simply partners, the stock owned by each, respectively, representing his interest in the association. So long, therefore, as plaintiff continued to be a stockholder, his rights and liabilities were those of a general partner. In December, 1872, he sold and transferred his stock to one of his associates, and thenceforth ceased to be a member of the copartnership as to his fellow partners; but as to those, at least, who had dealings with the bank while he was connected therewith, his liability in relation to business subsequently transacted continued as before, because he failed to give such notice of withdrawal as the law requires. His status in that regard was definitively settled in Shamburg *v.* Ruggles, 83 Pa. St., 148. Being thus liable, as between himself and creditors, whose debts were contracted after he withdrew, plaintiff paid divers sums in discharge of such indebtedness, some of which he was compelled to pay under stress of legal proceedings, and others he paid voluntarily, because he was liable and wished to save costs; and this suit was brought against those who composed the association, after he withdrew, to collect the amount thus paid for their benefit, and in discharge of the indebtedness which, as between them and himself, they alone were bound to pay. The testimony tended strongly to prove this state of facts, and why it was all withdrawn from the jury and a judgment of nonsuit entered we are at a loss to understand. The reasons that appear to have been assigned therefor by the learned judge, at the time, are. that "the evidence does not show plaintiff was a surety in any equitable or legal meaning of the term." . . . . . " The statute of limitations is susceptible of being invoked in regard to this suit, which was brought in 1883. The most of the payments were made in 1874, 1875, 1876, and some in 1878, in regard to which the statute would be invoked. As the suit stands now, the plaintiff seeks to recover against all persons as to whom the jury were sworn, and there is no evidence that he is entitled to recover from any one, unless it be W. H. Abbott. There is no evidence that Thompson, Kerr, W. W. Davis, or H. B. Porter had any stock, and unless the plaintiff would file a *retraxit* or *exoneratur* the jury would have to find for them." He accordingly entered the judgment of nonsuit. As to the last mentioned reason, it is sufficient to say the defendants were sued as

partners, and, under the rule of court, in the absence of an affidavit denying the fact of partnership as alleged on the record, plaintiff was not required to prove it. It must be regarded as admitted unless denied under oath. As to the statute of limitations, the testimony before us shows payment of considerable sums within six years before suit brought. In answer to the first mentioned reason, it may be stated as a general proposition that whenever one person is legally bound to pay the proper debt of another, the former, in a certain sense, occupies the position of surety for the latter, and if the surety pays the debt he has a right of action against his principal. This right of action may sometimes be asserted by an independent suit, and at other times in the form of subrogation. By reason of the neglect to give notice of his withdrawal plaintiff became liable to pay debts which, if the testimony is believed, were not his own, but the personal debts of those who continued to compose the firm, and, as partners, contracted them after he had withdrawn from the association. Being so liable for debts which, as between them and himself, were theirs and not his, he was at least *quasi* surety for them. In other words, as between themselves, the debts were theirs, and *ex æquo et bono* they ought to have paid them.

In his opinion, refusing to take off the nonsuit, the learned judge takes the position that plaintiff's remedy, if he has any, is in equity only, and not in the present form of action. But, in so doing, he appears to overlook the fact that plaintiff is not suing for contribution from those who were his fellow partners for debts contracted while he was a member of the firm and afterwards paid by him. If the declaration had been before him he would have seen at a glance that such was not the case. After reciting the fact that plaintiff had been associated with defendants as a partner, the sale of his interest and withdrawal from the firm, the continuation of defendants in same business under same name and style as before, the first count of the declaration charges that defendants, so continuing same business, became indebted to customers of the bank for deposits and other obligations incurred in the business thereof, "for all which last mentioned obligations and debts the said plaintiff was liable to said customers of said firm by reason of his having been a member thereof before the said debts and obligations were created as aforesaid, though the defendants ought to have paid and discharged the same and kept the said plaintiff harmless, and being so liable he, the said plaintiff, afterwards . . . . . was compelled to pay and did pay, lay out and expend for the said defendants, on account and in discharge of the said debts and obligations last mentioned, a large sum of money, &c., by reason whereof

the said defendants became liable to pay to the said plaintiff the sum of money last aforesaid, and being so liable they, the said defendants, afterwards undertook and faithfully promised said plaintiff to pay," &c. The second count is for money lent, paid, laid out and expended for defendants. The claim of the plaintiff is thus clearly defined and limited to debts contracted by the association after he withdrew therefrom.

After pointing out the difficulty of adjusting the equities of the several partners in the present form of action, the learned judge in the opinion last referred to says: "In the case before us it appeared in evidence, or at any rate it was known officially to the court from its own records that some, and indeed many, if not all of the defendants have paid out various and large sums of money from time to time in paying the creditors of the banking partnership, and possibly in the adjustment of the whole accounts recompense might have to be allowed to them—some more, some less—and not only from the plaintiff, but from each other. It is most absurd to say that all these various intricacies and adjustments could be settled in this common law action of *indebitatus assumpsit*. The question has passed beyond the realm of argument."

Upon the state of facts here assumed by the learned judge we quite agree with him in the conclusion thus stated; but they ought not to be, and we think they are not, the facts of this case. Much of the testimony tended directly to sustain plaintiff's claim as set forth in the declaration. If there was any that tended to prove payment of partnership debts for which, as between themselves, plaintiff was liable as a partner, it was irrelevant to the issue, and should not have been admitted. As to such facts as may have been officially known to the court from its own records in other cases, not given in evidence, it is scarcely necessary to say they were entirely foreign to an orderly disposition of the questions involved in the judgment of nonsuit.

In view of the nature of plaintiff's claim, as set forth in the declaration, and the testimony tending to sustain it, we think, for reasons above stated, that the judgment of nonsuit cannot be sustained on either of the grounds suggested by the court below, or on any other ground. The controlling principle of this case is substantially the same as that of Clarke's Appeal, 107 Pa. St., 436, in which it was held the appellants had a complete and adequate remedy at law. In that case Clarke and others had been members of an unincorporated banking association, but they assigned their stock and withdrew therefrom. Afterwards they were compelled to pay debts which, by the articles of association, their assignees and remaining partners were bound to pay. They then filed their bill

against the remaining partners and assignees of their own stock to compel defendants to re-imburse them for the debts so paid, and it was held a court of equity had no jurisdiction. As has been intimated, the articles of association in that case provided that the assignee of stock and remaining partners should exonerate the assignor from all debts contracted before or subsequent to the assignment. In that respect it differs, as to its facts, from the case before us, but that cannot affect the principle, for the reason that plaintiff is not claiming either reimbursement or contribution for debts paid by him, and which were contracted while he was a partner. His claim is expressly and exclusively for debts contracted by the association after he withdrew, debts, which, *inter se se*, the defendants alone were bound to pay. We have nothing to do with debts contracted while plaintiff was a stockholder. As to them, defendants presumptively have no claim against plaintiff for contribution. If they had why did not they avail themselves of the opportunity of asserting it when he filed the bill praying that an account of the partnership transactions might be taken and the equities of the several partners adjusted? Instead of doing so, they successfully resisted the proceeding. The present suit, as we have seen, does not relate to debts or obligations contracted while plaintiff was a member of the association, but to such only as were contracted afterwards, and for which plaintiff, by reason of his having been a partner and not having given notice of his withdrawal became liable; but which, as between himself and defendants, the latter were clearly bound to pay. As to those debts, plaintiff's relation to the defendants was that of surety, and when he was compelled to pay, or voluntarily paid such debts he had a right of action against defendants to recover the amount so paid for them. The testimony presented questions of fact which should have been submitted to the jury.

Judgment reversed and a *venire facias de novo* awarded.