B. C. CHRISTY, REC., v. B. H. Y. SILL ET AL.

APPEALS BY G. W. GUTHRIE AND EDWIN BINDLEY FROM THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY, IN EQUITY.

Argued November 12, 1889—Decided February 24, 1890.

[To be reported.]

1. The purchase of shares in an unincorporated banking association, and a continuance of the business without any separation of past from fu-

Statement of Facts.

ture liabilities, or discrimination between past and future profits, will not make the purchaser liable for the pre-existing indebtedness of the bank.

(*a*) The partnership articles of a banking association provided that if any shareholder desired to sell his stock, he should "first offer it to the board at a stated price," and, if not accepted by the board, he then might dispose of it elsewhere, as he might elect.

(*b*) If the shareholder was not indebted to the bank on indorsements or otherwise, the shares were to be transferred on the books of the association, and it was further provided: "All stockholders are hereby individually bound to make good to all depositors the amount of their deposits: "

2. These provisions and restrictions were of themselves inoperative to constitute an undertaking by the firm and the incoming partners, that the latter should become bound for the pre-existing liabilities of the association: Clarke's App., 107 Pa. 436, and Shamburg v. Abbott, 112 Pa. 6, explained.

3. While a suit is pending before a referee, the court cannot pass upon the validity of a claim involved in it; and cannot, therefore, authorize an auditor appointed to distribute a fund arising in another proceeding, to pass upon the validity of such claim.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Nos. 163, 159 October Term 1889, Sup. Ct.; court below, No. 211 January Term 1881 (acct. at No. 180½ July Term 1888), C. P. No. 2, in Equity.

On November 8, 1879, to No. 150 January Term 1880, C. P. No. 2, J. T. Stockdale, trustee of the Pittsburgh Savings Bank, filed a bill in equity against Michael Maginn and others, shareholders, for a dissolution of the bank, for a receiver, and for an account; and on November 22, 1879, B. C. Christy was appointed the receiver. Among the assets of the bank was certain real estate, to secure possession of which the receiver brought ejectment, at No. 211 January Term 1881, against Bella H. Y. Sill et all. Before the final determination of this ejectment, it was compromised, the receiver being made a trustee for himself and the defendants in the ejectment, to sell the land and distribute the proceeds according to a certain method.

On April 28, 1888, to No. 180½ July Term 1888, Mr. Christy, as trustee, filed an account of the fund realized by him from the sale of the land, amounting to $12,486.55, and on June 15, 1888, *Mr. Magnus Pflaum* was appointed auditor to distribute

the fund. Subsequently, of the fund for distribution, $11,295.30 was awarded to B. C. Christy, receiver of the Pittsburgh S. Bank.

On September 8, 1888, on motion of Mr. A. M. Brown for creditors of the Pittsburgh S. Bank, but, as it was claimed, without notice, and notwithstanding the pendency of the proceedings at No. 150 January Term 1880, in which the receiver was appointed, and that the order appointing Mr. S. A. McClung general master in that case was still in force, the court made an order that the order appointing Mr. Pflaum auditor be enlarged by adding thereto the further direction that the said auditor should report a distribution of the fund, to wit, $11,295.30, in the hands of the receiver. It was in the distribution of this fund that the contentions herein arose.

In his report, the auditor found that the Pittsburgh S. Bank was a copartnership composed of a great number of persons holding shares of the capital thereof, and was organized under articles of association containing inter alia the following paragraphs:

" 26. Any stockholder wishing to sell his stock, must offer it to the board at a stated price. If not accepted by them, he may dispose of the same elsewhere, as he may elect.

" 27. All stockholders are hereby individually bound to make good to all depositors the amount of their deposits."

Transfers of shares were made by the holders at different times from the year 1872 to August 25, 1876, when the last transfer was made. The transferees took the place of their assignors, without any change of the firm name or place of business; and the bank carried on business with its customers, old and new, as if no change of shareholders had taken place. On January 4, 1887, the bank suspended business.

Among the disputed claims presented for allowance were the following:

6. James A. Hutchinson claimed $1,070.79, for moneys paid upon a judgment obtained in 1879 by John Ubalto against the Pittsburgh S. Bank and certain shareholders, among whom was said James A. Hutchinson. The indebtedness to the judgment plaintiff was incurred May 6, August 28, and September 21, 1875 ; and all the defendants had ceased to be partners in the bank before the suit was begun, having withdrawn

on various dates between January 29, 1872, and August 25, 1876.

7. G. W. Guthrie, trustee, whose claim, as it was stated, originated as follows: After the suspension of the bank, various parties who had been shareholders at different times between January 29, 1872, and August 25, 1876, but all of whom had sold and transferred their shares therein, and had given notice thereof by advertisement prior to August 25, 1876, entered into an agreement with each other, in pursuance of which they advanced $21,449.25 to said trustee, with which he purchased and took assignments of the following claims:

| Claimant. | Character. | Date of Claim. | Situation. | Marked. |
|---|---|---|---|---|
| Julius Knopf, | Cert. of deposit, | May & Oct., '73, | Judgment. | C. |
| " " & wife, | " " | October, 1873, | " | D. |
| John O'Brien, | " " | January 16, 1874, | " | E. |
| Z. S. Haines, Adm. | " " | March 1, 1877, ⎫ | " | A. |
| " " | Bal. of deposit, | Sept. 1, 1877, ⎭ | " | |
| Fred. Osterling, | Cert. of deposit, | January 4, 1878, | " | F. |
| City of Pittsburgh, | Bal. of deposit, | After Sept., 1876, | In suit. | H. |

Some of the parties contributing to this fund had sold and transferred their shares in the bank before any of these claims originated, and all of them had done so before the claim of the city of Pittsburgh originated. The certificates of deposit on which claims A and F were based were issued after all said parties had so sold and transferred their shares, but some of the deposits for which they were issued were made before, and some after such sale and transfer. By the terms of the agreement, any money realized from the assets of the bank was to be distributed among the contributors to the fund in the order in which they had sold their shares.

8. Edwin Bindley claimed an interest in each of two judgments; one, in favor of Joseph Clements obtained in 1880 against the Pittsburgh S. Bank and certain partners therein, the cause of action arising on December 26, 1873, and the assignment to the claimant having been made on March 8, 1880; the other, in favor of Julius Knopf, obtained in 1880 against said bank and certain members thereof, the indebtedness having been incurred March 15, May 23, October 10, 1873, and the assignment to the claimant having been made in March, 1881.

As to the claims mentioned, the auditor reported as follows:

The auditor is of opinion that all the foregoing claims are controlled by the following principles:

1. Creditors of different partnerships, composed in part of the same members, must establish their rights through the medium of such membership. "The equity of the creditors must be worked out through the medium of that of the partner:" Doner v. Stauffer, 1 P. & W. 198; Snodgrass's App., 13 Pa. 471; Baker's App., 21 Pa. 76; York County Bank's App., 32 Pa. 446; Frow's Est., 73 Pa. 459; Scull's App., 115' Pa. 148. In Pennsylvania, "joint stock associations" are merely partnerships, and in Clarke's App., 107 Pa. 136, it has been so decided as to the Pittsburgh S. Bank. Hence the principles ruled in the foregoing cases apply with full force.

The fund belongs exclusively to the parties to the present bill in equity, they being the membership of the bank at its suspension. It has been decided that upon a transfer of partnership interests, the remaining partners have exclusive control and ownership of the partnership assets: Baker's App., 21 Pa. 76; Clark v. Wilson, 19 Pa. 414; Bullitt v. M. E. Church, 26 Pa. 110; Clarke's App., 107 Pa. 436.

The bank, being but a partnership, changed upon each transfer of stock from an old to a new copartnership; and with such change of the rights of the various members, also the right of creditors changed. Although, in appearance, the bank remained in all respects the same, yet in law their claims against the old firm could not have been collected from the new. The incoming partner was as little bound for the payment of the old debt as the old creditors were bound to look to him for payment: Kountz v. Holthouse, 85 Pa. 235.

Each successive firm was liable for the payment of its own debts, and the assets of each firm, while kept intact, belonged first to the creditors of such firm; but when these assets became the property of a succeeding firm, its creditors had the sole right thereto, and the old creditors had to look to the individuals who composed the old firm for payment. An incoming partner may become liable for the debt of the old firm by agreement, but the presumption of law is against such liability: Kountz v. Holthouse, 85 Pa. 235. No proof was offered in the present case of such agreement.

2. Upon a transfer of partnership interests the assets vested

in the remaining or incoming partners are not a trust fund for the payment of the debts of the old firm, but the obligation to pay such debts becomes an individual liability of each member of the old firm.   The creditor of the old firm, or the outgoing partner who had to pay such debt and by subrogation takes the place of such creditor, has no lien against the assets of the new firm, and must give way to the rights of the creditors who had dealings with and who alone have a lien upon the assets of the new firm.   Nor does the assumption of an agreement to pay the old debt by the remaining or incoming partner, and giving indemnity therefor, preserve the lien.   Such agreement is but a personal obligation and must be so enforced: 1 Bates on Partnership, § 551; Baker's App., 21 Pa. 76; York County Bank's App., 32 Pa. 446.

This principle does not apply where " upon the accession of a new member a new promise has been made by the entire new firm in respect to the payment of the old debt, with the consent of the old partners as well as the creditor."   In such case, " it would amount to a novation of the debt and the new firm will be liable : " Story on Partnership, § 153.   Here such facts do not exist; on the contrary, the various creditors, not having given their consent to the transfer, had brought suit and recovered their debts from the former partners, and even as to the exclusive liability of the remaining members of the new firm for these debts, the facts are not entirely clear.

The claimants 6 and 7 base their rights to repayment upon the fact that the articles of association permit a transfer of the stock, and that having so transferred, they became absolved from the payment of the partnership debts then existing.   However, some force should be given to the further provision in the articles of association, article 27 : " All stockholders are hereby individually bound to make good to all depositors the amount of their deposits."   This was an agreement more between the stockholders themselves than between the stockholders and the depositors.   As to the latter, this provision was unnecessary; the law protected them.   But as between the stockholders, it would seem that by the mere withdrawal of a solvent stockholder and the substitution, as may be the case, of an insolvent transferee without consent of all the other stockholders, this individual liability cannot be shaken off.   It may be doubtful

whether even the consent of the directors, in the absence of express authority, could release such withdrawing stockholder from this liability, and this especially if the bank was insolvent.

The transfer of stock seems to have been loosely conducted by the bank, and the testimony on this point is very unsatisfactory. That the transferer should not be indebted to the bank seems to have been the only care of the directors, and no attention was apparently paid to the fact whether the bank was solvent or insolvent when stock was transferred. An affirmative fact not proved is taken as not to exist: York County Bank's App., supra. Hence, whether the bank was insolvent before September 11, 1875, must be taken in the negative. But on said date the bank was found to be, and until its suspension remained, insolvent, and some of the outgoing partners, who now desire repayment for debts of the bank paid by them, withdrew after said date. Out of twenty-five, five belong to this class, whose joint contribution was $4,650 to the fund out of which these debts were paid. The interests, however, of all these parties are so intricately combined, that no severance of their rights can now be attempted.

3. Because the claims 6 and 7 are, with one exception (the city of Pittsburgh claim), in judgment, and as such have been offered in proof against the fund, does not lend any strength to their claim to share in its distribution. The judgments are no liens upon the fund. They were not liens upon the land which produced the fund, nor were the defendants in those judgments owners of the land. The judgments merely serve the purpose of proving the exact amount the claimants were forced to pay as former partners of the bank, and for which payments they want to be reimbursed.

4. The payment of these claims constituted those paying them sureties, and as such they had rights for repayment against the remaining partners: Shamburg v. Abbott, 112 Pa. 6. That case, based upon facts similar to the present, points out that such sureties may enforce their rights either by an independent action or by way of subrogation. The subrogation, by reason of the assignment to G. W. Guthrie, trustee, can only be of effect against the co-defendants in each judgment whose names are specifically given in the findings of the facts in each claim. These defendants are not the members of whom

the last firm or partnership was composed. And subrogation cannot be had against parties not defendants of record and who had no day in court. The other remedy, action of indebitatus assumpsit, was not brought, and this seems to the auditor the only remedy the sureties had. In Bullitt v. M. E. Church, 26 Pa. 110, it was held that the outgoing partner had a right to demand of the remaining partner the payment of the partnership debts, but that a suit on the contract was the only means of enforcing that obligation. But now, more than six years have elapsed since they became sureties, and their rights are barred by the statute of limitations. It follows, then, that these parties have neither a lien upon the fund, nor rights against the owners of the fund.

5. The cases referred to in support of claims 6 and 7 are: Worrall's App., 41 Pa. 524; Datesman's App., 77 Pa. 243, and Schlaudecker's App., 22 W. N. 37. The first two cases treat of rights as between lien creditors, and have therefore no application to the present contention, in which the parties have no lien whatever upon the fund. Schlaudecker's Appeal is of still more remote application. It decides that in a corporation of which the members are individually liable, outside of and in addition to their stock in the corporation, this liability is merely a guaranty, and such ultimate liability could not deprive the members, who were also creditors, from sharing in the distribution of the fund. In that case, also, the claimants had a lien upon the fund which here is entirely wanting.

The claims 6 and 7 the auditor finds, for the reasons above given, are not entitled to share in the fund, and should be excluded from sharing therein.

8. As to the claims of Edwin Bindley, the auditor finds:

A. 1. That Joseph Clements, at 372 January Term 1880, sued the Pittsburgh S. Bank, and on February 21, 1880, obtained judgment (amount not liquidated) against the following members: M. & H. Herzog, E. & C. Maginn, J. C. Bindley, A. Abrams and Jacob Fink. 2. That the cause of action arose December 26, 1873. 3. That on March 8, 1880, the said judgment was assigned, inter alia, the one seventh to the said Edwin Bindley.

B. That of the judgment of Julius Knopf, No. 200 March Term 1880, the same specified in claim 7, C, the sum of $500 was assigned to the said Edwin Bindley.

These two claims belong to the same class as claims 6 and 7, and the opinions expressed as to them apply fully to these two claims, and for the same reasons there given they should not share in the fund. However, there is an additional ground of exclusion. Edwin Bindley purchased an interest in each of the two judgments. He is a stranger to the record, and to the defendants therein, as well as to the persons whose fund is now being distributed. He has no legal rights nor any equity whatever to the fund. The auditor, therefore, is of opinion that these claims should be excluded from the distribution of the fund.

To the foregoing report, G. W. Guthrie filed exceptions alleging that the auditor erred, inter alia, as follows:

1. In distributing any portion of the fund awarded to B. C. Christy, receiver, and reporting a distribution of the same among the creditors of the Pittsburgh S. Bank.

4. In excluding the claims of G. W. Guthrie, trustee, and in refusing to permit the same to participate in the distribution pro rata with the other creditors of the bank.

11. In failing to find, in relation to claim H, that there was due the city of Pittsburgh, for deposits made by it in said bank during the year 1877, the sum of $41,530.60.

21. In finding that "each successive firm was liable for the payment of its own debts, and the assets of each firm, while kept intact, belonged first to the creditors of such firm; but when these assets became the property of a succeeding firm, its creditors had the sole right thereto, and the old creditors had to look to the individuals who composed the old firm for payment."

25. In not finding that under the articles of association any stockholder had the right to transfer his stock therein, with the consent of the board of directors; and that when any stockholder sold his stock in good faith, and with the consent of the directors transferred the same on the books of the bank to the purchaser, who was accepted as a stockholder in his stead, the retiring stockholder thereupon ceased to be a member of the firm, and was entitled to be indemnified from all the debts thereof; and that the remaining stockholders and the new stockholder thereupon become liable for all the debts of said bank, and bound to indemnify him against the same.

Edwin Bindley filed exceptions alleging that the auditor erred in excluding his claim from the distribution.

The said exceptions, having been overruled by the auditor, they were renewed in court on the filing of the report. After argument, they were dismissed by the court, WHITE, P. J., and the distribution reported by the auditor was confirmed. Thereupon G. W. Guthrie, trustee, took the appeal to No. 163, and Edwin Bindley took the appeal to No. 159, specifying for error, severally, that the court erred in dismissing their respective exceptions.

*Mr. Geo. W. Guthrie* (with him *Mr. James A. Reed* and *Mr. Phil. C. Knox*), for the appellants :

The finding of the auditor is in direct conflict with the decision of this court in Clarke's App., 107 Pa. 436, where this identical agreement was passed upon, and with the opinion in Shamburg v. Abbott, 112 Pa. 6, where the former case was fully discussed and approved. In Frow's Est., 73 Pa. 459, it was held that the effect of such an agreement, even in the case of a common-law partnership, was to make the outstanding liabilities of the old firm, debts of the new one. And see Mayhew's Case, 5 DeG., M. & G., 837 ; Tyrrell v. Washburn, 6 Allen 466 ; Savage v. Putnam, 32 N. Y. 501.

*Mr. A. C. Patterson*, for the appellees :

To overcome the reasons of the auditor for finding as he did, would necessitate a change of the law of partnership in this state by recognizing joint stock companies, as such, subject to rules not applicable to partnerships. But in Clarke's App., 107 Pa. 436, followed by Shamburg v. Abbott, 112 Pa. 6, this court treated unincorporated banks simply as partnerships. Wherein the finding of the auditor is in conflict with the decisions above cited, is not apparent nor made clear in appellant's argument.

### GUTHRIE'S APPEAL.

OPINION, MR. JUSTICE MCCOLLUM :

In 1866 a copartnership was formed under the name of the Pittsburgh Savings Bank, for the purpose of transacting a banking business at Pittsburgh, Pa. The capital was fixed at

$300,000, and divided into shares of $100 each. A purchaser of one or more of these shares became a member of the partnership, and was called a stockholder. The management of the bank was committed to a board of directors, a president, vice-president, and a treasurer or cashier. It was stipulated in the partnership articles that if any stockholder desired to sell his stock, he must first offer it to the board of directors at a stated price, and, if it was not taken by the board, he was at liberty to dispose of it to whom he pleased. By another provision in these articles, all stockholders were "individually bound to make good to all depositors the amount of their deposits." When a member sold his stock, it was transferred to his vendee on a book called the "Stock Ledger," but the business was conducted as before. By this transfer the purchaser acquired the rights and incurred the liabilities of a partner. These, as affected by the partnership articles, will be presently considered. In August, 1878, the bank, being unable to meet its engagements, closed its doors; and subsequently a bill was filed by one of the partners for a dissolution, an account, and a receiver. The parties to this bill were stockholders when the bank ceased to transact business. A receiver was appointed, and he now has in his hands a fund produced by a sale of the partnership property. The appellant contends that the claims he holds as trustee are entitled to participate in this fund. It is admitted that these claims, with one exception, represent debts of the partnership as it existed prior to August 25, 1876, when the last transfer of stock was made. The members of the partnership who retired from it on or before that day concede their liability for debts contracted while they were stockholders, but allege that, as between them and the partnership which continued the business, they are sureties. The appellant is their trustee. He bought these claims at their request, and with their money. As their representative, he is on no higher ground than the creditors from whom he purchased.

The learned auditor, being of opinion that the fund belonged to the partnership as it existed after August 25, 1876, and was primarily applicable to the payment of its debts, refused to award any portion of it to these claims. In explanation and vindication of this refusal, he said: "The fund belongs exclusively to the parties to the present bill in equity, they being

the membership of the bank at its suspension. The bank, being but a partnership, changed upon each transfer of stock from an old to a new copartnership, and with such change of the rights of the various members, also the rights of creditors changed. Although, in appearance, the bank remained in all respects the same, yet in law their claims against the old firm could not have been collected from the new. The incoming partner was as little bound for the payment of the old debt as the old creditors were bound to look to him for payment. Each successive firm was liable for the payment of its own debts, and the assets of each firm, while kept intact, belonged first to the creditors of such firm; but, when these assets became the property of a succeeding firm, *its* creditors had the sole right thereto, and the old creditors had to look to the individuals who composed the old firm for payment." In support of these conclusions, he cited and relied on Doner v. Stauffer, 1. P. & W. 198; Snodgrass's App., 13 Pa. 471; Baker's App., 21 Pa. 76; York Co. Bank's App., 32 Pa. 446; Frow's Est., 73 Pa. 459; Clark v. Wilson, 19 Pa. 414; Bullitt v. M. E. Church, 26 Pa. 110; Clarke's App., 107 Pa. 436; Scull's App., 115 Pa. 148.

The contention of the appellant is not so much with the principles announced by the auditor, as with their application to the case in hand. He claims that under these partnership articles, and in view of the manner in which the business of the bank was conducted and its accounts were kept, the retirement of an old stockholder and the introduction of a new one did not work a dissolution of the company, but that it remained, and the incoming partner became liable for all its debts.

It is a well-settled rule that an incoming partner is not liable for debts contracted by a firm before he entered it. He may become liable for them by his contract with the retiring partner, but the party who alleges such liability must prove the agreement which created it: Kountz v. Holthouse, 85 Pa. 235. The purchase of stock in an unincorporated bank, and a continuance of the business, without any separation of past from future effects and liabilities or discrimination between past and future profits, will not render the purchaser liable for the antecedent debts of the bank. The payment by the bank, after he became a member of it, of interest on such debts, is insufficient to

charge him with an assumption of them: Shamburg v. Ruggles, 83 Pa. 148. In such a bank the stockholders have the rights and responsibilities of, and in their relation to the public and each other are general partners: Shamburg v. Abbott, 112 Pa. 6. If, therefore, the principles which govern ordinary partnerships do not apply in the present case, it is because of some provisions in the partnership articles which change the rights and liabilities of the partners, and deprive the retirement of an old partner, and the introduction of a new one, of the usual effect of such action. These articles allow a stockholder to sell his stock, if he is not indebted to the bank on indorsements or otherwise; require that the transfer of it shall be made on the books of the company, and that he shall first offer it to the board of directors, at a stated price. Article 27 is in the words following: "All stockholders are hereby individually bound to make good to all depositors the amount of their deposits." In this article, and the regulations and conditions affecting the sale of stock, the appellant claims there is an undertaking by the firm and incoming partners to pay the prior indebtedness of the firm, and to exonerate the retiring partners from it.

We are unable to discover in the restrictions on the sale of stock any engagement by the incoming partner to become liable for the antecedent debts of the firm, and we cannot construe article 27 as imposing on him such a liability. If it had been the purpose of the partnership to attach such a result to a change of membership, it should have been clearly expressed. We think article 27 refers to deposits made with the firm of which the stockholder is a member, and that it has no application to deposits made with a preceding or subsequent firm. Thus read and understood, it is intelligible and in accord with well-established principles.

In Clarke's App., 107 Pa. 436, the parties now represented by the appellant filed a bill in equity against the stockholders of the Pittsburgh Savings Bank, and alleged that said bank was a copartnership, formed under articles of agreement which provided for sales and transfers of stock and allowed any partner to sell his interest in the partnership at any time, and that the assignee of such interest succeeded to the rights and liabilities of the assignor; "that when any partner sold his interest, and the same was transferred upon the books of the firm to the pur-

chaser, the remaining partners and said purchaser were bound
to exonerate him from all debts then or thereafter contracted,
and to apply the assets of the firm, so far as required, to the
payment of the then existing liabilities ; " and that the plaint-
iffs were partners in said firm, but had sold their interests there-
in at various dates subsequent to January 1, 1872, and the
same were transferred upon the books of the firm to the pur-
chasers thereof. They further averred that, by reason of the
default of the defendants, they had been compelled to pay
claims for deposits made while they were partners, and for
deposits subsequently made by old customers who had not been
notified of the sale of their interests. They prayed for an ac-
count, and a decree that the defendants reimburse them for
the payments so made. Their bill was dismissed on the ground
that their appropriate remedy was an action at law, on the
agreement set forth in it. In delivering the opinion of this
court, Mr. Justice PAXSON said: " The only question here is
one of jurisdiction. . . . . We have merely the case of a part-
ner who has sold his interest in the firm, with an agreement
that he shall be exonerated from all the firm debts, present and
future, who has been compelled to pay certain debts of the
firm, and who files a bill claiming to be reimbursed for such
payment." The appellant draws from this language, which is
merely descriptive of the case presented in the plaintiffs' bill,
the erroneous inference that the partnership articles were con-
strued by this court in accordance with his present contention.
The only question raised and considered was, not whether the
claim of the plaintiffs was correctly stated in their bill, but
whether a court of equity had jurisdiction of it. Mr. Justice
STERRETT's reference in Shamburg v. Abbott, 112 Pa. 6, to the
partnership articles in Clarke's Appeal, is not descriptive of an
adjudication which interpreted those articles, but of the claim
on which the question of jurisdiction was decided.

We agree with the auditor and court below that claims
against the Pittsburgh Savings Bank for deposits made prior
to August 25, 1876, cannot participate in this fund, to the ex-
clusion of, or pro rata with, claims for deposits made after that
date.

It is alleged that the claim of the city of Pittsburgh, trans-
ferred to the appellant in trust as aforesaid, represents a debt

contracted by the bank after the last change in the membership of the firm. The amount of this claim is $41,530.16. The city brought suit upon it in 1878, and included as defendants therein all who, at any time, held stock in the bank. This suit by agreement of the parties was sent to a referee, before whom it was pending at the time of the audit. The parties now represented by the appellant bought the claim for $17,092.63. It is contended that the monthly balances in the account between the city and the bank, from June 1, 1876, to December 31, 1877, show that the claim is for deposits made by the city after August 25, 1876. The balance on the 1st of August, 1876, was $45,534.24, and on the 1st of September following, $204,196.72. It is not alleged that the September balance represented deposits made after August 25th, or that the August balance was paid before that day. It is a fair inference from these balances that the amount due the city on the day the last transfer of stock was made, was greater than the amount due on the 31st of December, 1877. The former was a debt of the old partnership, and it may well be doubted whether the old partners, who were bound for it, can successfully claim that the latter, which is the final balance in an account which was continuous from June 1, 1876, to December 31, 1877, is a liability of the new firm. But we do not pass on this question now, as there is nothing upon the record to show that it was raised before the auditor, and we cannot say that all the evidence necessary for its proper determination is before us.

The auditor was of opinion that he had no jurisdiction of this claim, because a suit upon it was pending before a referee. The reference of a suit deprives the court in which it is pending of all power over it while the agreement to refer is in force. The court can regain original jurisdiction of it only by setting aside the agreement. It cannot, while the suit is before the referee, pass upon the validity of the claim involved in it, because the parties have cast that duty on a tribunal of their own creation, and what the court may not, in this particular, do directly, it cannot authorize its auditor to do. We think, therefore, that the auditor was right in refusing to take cognizance of this claim, and, as he was not asked to set aside any portion of the fund to await the decision of the referee, we need not consider his duty in such case.

The objection to the order enlarging the powers of the auditor is without merit. It rests upon a bare irregularity, and the appellant has no standing to contest it.

> Decree affirmed, and appeal dismissed, at the cost of the appellant.

### BINDLEY'S APPEAL.

OPINION, MR. JUSTICE McCOLLUM:

In Guthrie's Appeal, No. 163 October Term 1889, we decided that the portion of this judgment held by Guthrie in trust for former partners could not take any part of the fund. This appellant, as to his portion of the judgment, is in no better position. Guthrie's Appeal is decisive of the question raised here.

> Decree affirmed, and appeal dismissed, at the cost of the appellant.

