103 309
153 91
103 309
176 518

## Peoples' Bank of Wilkes-Barre *versus* Legrand.

1. An indefinite extension of time for payment of a promissory note, granted by the holder to the maker, does not release the indorser. Inasmuch as such agreement would not estop the holder from suing the maker on the note forthwith, so the indorser, by taking up the note, could sue on it immediately.

2. Aliter, if such extension were for a definite time.

3. Where at the maturity of a note held by a bank the maker's balance on deposit in said bank was insufficient to pay the note, which was protested for non-payment, the bank is not bound, for the protection of the indorser, to apply the maker's subsequent deposits to payment of the note, although they were sufficient for that purpose.

4. *Semble*, that if, at the time the bank began suit against the indorser, the maker had funds deposited with the bank, the indorser might avail himself of the maker's right of set-off, to the extent of such deposits.

5. A bank discounted for A., who was a depositor, a promissory note made by A. and indorsed by B., which was protested for non-payment at maturity. The bank brought suit on the note against A., pending which it agreed with A. to give time (without specifying any definite period), A. agreeing to pay ten per cent. interest on the note, and to continue to do business with the bank. At the maturity of the note, A's deposit balance was insufficient to pay the note, but subsequently, at several different times, he had sufficient funds on deposit to pay the note. Upon the subsequent closing of A.'s deposit account, the bank brought suit against B. the indorser:

*Held*, that such extension of time, being indefinite, did not operate to release B. as indorser.

*Held*, further, that the omission of the bank to apply A.'s subsequent deposits to the payment of the note, did not discharge B. as indorser.

April 13th 1883. Before Mercur, C. J., Gordon, Paxson, Trunkey, Sterrett, Green and Clark, JJ.

Error to the Common Pleas of *Luzerne county:* Of January Term 1883, No. 371.

Assumpsit, by the People's Bank of Wilkes-Barre, against Lewis Legrand, indorser of a promissory note made by one Lowenstein. Pleas, non assumpsit, payment with leave, set-off, &c.

On the trial, before Woodward, J., the counsel for plaintiff and defendant filed the following agreement of facts established by the evidence, in the nature of a special verdict subject to certain points reserved, viz:

It is agreed that the evidence establishes the following facts:

1. That Legrand, the defendant, indorsed Lowenstein's note for $2,500, which was discounted by plaintiff, not paid at maturity, and duly protested with lawful notice to said Legrand, indorser.

[Peoples' Bank of Wilkes-Barre *v.* Legrand.]

2. That Lowenstein was a depositor of large amounts in the plaintiff's bank, at the time said note was discounted, to wit: May 15th 1875, and also at the time it was protested, to wit: August 16th 1875.

3. That suit was brought by the bank against Lowenstein, November 13th 1875, and judgment obtained January 13th 1876. Suit against Legrand was begun December 8th 1876.

4. That Lowenstein continued to do business with the bank as a depositor until December 8th 1876.

5. That after suit was brought against Lowenstein, he asked the president of the bank for time to pay the note, and agreed to pay ten per cent. interest thereon, and to continue doing business with the bank, but no particular time was specified or agreed upon.

6. That Lowenstein had not sufficient funds in the bank to pay the note at the time it matured, but that afterwards, and after the agreement aforesaid, he had at several different times between the maturity of the note, August 16th 1875, and the closing of his account, December 8th 1876, sufficient funds there to pay the note.

7. That the amount due upon the note, May 18th 1882, is $2,977.45.

The points reserved by the court are the following:

1. Was Legrand entitled as the surety of Lowenstein to have the money deposited by the latter in the plaintiff's bank, applied to the payment of the note, and was it the duty of the bank so to apply those deposits?

2. Had the bank the right to apply the money deposited by Lowenstein, to the payment of the note, under the terms of the agreement on which he continued his business with the bank?

So agreed this 18th of May, A. D. 1882.

The court thereupon entered the following order and verdict of the jury:

Now, 18th May 1882, the facts of this case being determined by agreement filed, the court directs the jury to render a verdict in favor of the plaintiff for the sum of $2,977.45, subject, however, to the reserved points specified in the foregoing agreement of counsel, and reserving the right to enter judgment, non obstante veredicto, in favor of the defendant, if upon consideration of those points, and the facts agreed upon, the court shall be of the opinion that judgment should be so entered.

Same day the jury do say they find in favor of the plaintiff for the sum of $2,977.45.

Afterwards, on argument of the motion to enter judgment on points reserved, the following opinion and judgment was filed by WOODWARD, J.:

[Peoples' Bank of Wilkes-Barre *v.* Legrand.]

From the statements filed in this case, we content ourselves with a brief reference to two facts that are conclusive in their effect upon our mind :

First. That after suit was brought against Lowenstein, he made an agreement with the president of the bank for an extension of time upon the note, on the condition that he should pay ten per cent. interest thereon, and should continue to do business with the bank as a depositor and otherwise.

Secondly. That between August 16th 1875, the date of the maturity of the note, and December 8th 1876, the date of the closing of his account, he had on deposit in the bank sufficient funds to pay the note.

Under these facts we consider the law of the case to be properly stated in Miller *v.* Stem, 2 Penn. St. 286, and that the surety or indorser is discharged (1), by virtue of an extension of the time of payment which was sufficiently definite to meet the requirements of the law, and (2), because there was a valuable and sufficient consideration in the case.

Therefore, judgment is now entered in favor of the defendant, and against the plaintiff, non obstante veredicto.

The plaintiff took this writ of error and filed the following specifications of error.

1. The court erred in holding that the defendant was discharged by reason of the extension of time, as follows : "By virtue of an extension of the time of payment, which was sufficiently definite to meet the requirements of the law."

2. The court erred in entering judgment upon a point which was not reserved.

3. The court erred in directing judgment to be entered in favor of the defendant, non obstante veredicto.

*Henry W. Palmer* (with whom were *Dewitt & Fuller*), for the plaintiff in error.—No definite time of extension was agreed upon. It was wholly vague and uncertain. Nothing prevented the bank from suing the next day. A reference to the very case upon which the learned judge bases his opinion (Miller *v.* Stem, 2 Barr 286), will show that an extention to discharge the surety must be for a time certain, and this is the uniform ruling of our Pennsylvania courts.

The defendant was not relieved from liability by reason of the plaintiff's failure to appropriate the maker's subsequent deposits to the payment of the note, and this for three reasons : (1.) An indorser, whose liability has become fixed by due protest, is not a surety but a principal : 2 Parsons on Bills, p. 243 ; Trimble *v.* Thorne, 16 Johns. 152. (2.) General deposits are not such property of the principal as the bank is bound to avail itself of, for the benefit of a surety. The relation between a

[Peoples' Bank of Wilkes-Barre *v.* Legrand.]

bank and its depositor is simply that of debtor and creditor. As against the note of a depositor held by the bank, the deposit is merely a set-off, of which the surety cannot avail himself: Bank *v.* Jones, 6 Wr. 536; Morse on Banking 28, 30, 31. (3.) Lowenstein's deposits with plaintiff, subsequent to the protest of the note, were made upon the implied agreement that they should not be appropriated in payment of the note. Time to pay the note was the sole inducement for making the deposits. Could the bank have rightfully then appropriated these deposits to the payment of the note? In Maryland, Illinois, and New York, the question has been explicitly decided in the negative: Martin *v.* Mechanics' Bank, 6 Harr. & J. 235; Voss *v.* German Bank, 83 Ill. 599; Bank *v.* Smith, 66 N. Y. 271. Per contra is but a single decision of a court of Delaware: McDowell *v.* Bank, 1 Harrington 369.

*Garrick M. Harding* (with whom was *John McGahren*), for the defendant in error.—The definiteness of the extension in this case is apparent, from the terms of the agreement, viz., so long as Lowenstein continued his deposits in the bank and paid the interest. Certum est quod certum reddi potest. In the absence of an express agreement to the contrary between the plaintiff and Lowenstein, the former was bound to appropriate the latter's deposits to the payment of the note, and his omission to do so discharges the surety. This has been unequivocally decided in the only case that is directly in point and on all fours with ours, where it was said: "If the maker of a note has funds in a bank on general deposit after a note owned by the bank falls due, the bank is bound to apply them in payment of the note, or the indorser is discharged:" McDowell *v.* Bank, 1 Harrington, 369.

Mr. Justice GREEN delivered the opinion of the court, May 25th 1883.

We assume that the matters contained in the fifth clause of the agreement of facts signed by the parties, constituted an actual agreement, though it is not so stated. The sixth clause, however, refers to the subject of the fifth as "the agreement aforesaid," and it has been so treated, both in the printed and oral arguments. As there stated, the agreement between the bank and Lowenstein, extending the time for the payment of the note in suit, was indefinite, as "no particular time was specified or agreed upon." The learned court below held that the extension of the time of payment was sufficiently definite to meet the requirements of the law, and that it was founded upon a valid consideration, and, therefore, the endorser was discharged. We are not able to concur with the court as to

[Peoples' Bank of Wilkes-Barre v. Legrand.]

the character of the agreement for extension of the time of payment. Nothing is said about it in any other part of the paper except the fifth clause, and there it is distinctly stated that no particular time was specified or agreed upon. The remainder of the clause speaks only of a proposition for more time to pay the note, an increase in the rate of interest to be paid, and a continuation of business by Lowenstein with the bank. We see no element of certainty in this as to the time when the note was to be paid. On the contrary, that time is essentially indefinite and uncertain, and there was nothing to prevent the bank from bringing suit on the note the next day after the agreement to extend was made. This being so, the indorser could, by paying off the note, demand its surrender and commence an action immediately. This consideration brings the case clearly within the operation of the rule as stated in Miller v. Stem, 2 Barr 286, and the line of cases which have followed and never questioned it. All the elements of the rule are thus presented in Henderson's Adm'r v. Ardery's Adm'r, 12 Cas. on p. 451. "That a creditor having a principal debtor and a surety, discharges the surety by entering into an agreement with the principal, which can be enforced at law or in equity, whereby he extends the time of payment for any definite period beyond that mentioned in the original contract, is proved abundantly by our authorities." In Miller v. Stem, the case turned upon this very question, together with an absence of consideration. On p. 288 we said : "But mere consent to forbear for a loose and uncertain period does not tie up the creditor's hands ;" and also, "To take away from the plaintiff a just debt in order to relieve a surety, justice requires there should be a clear, distinct agreement by the creditor, placed beyond reasonable doubt for a time certain, or total forbearance, or forbearance for a reasonable time." In Brubaker v. Okeson, in 12 Cas. on p. 522, Strong, J. said, "nothing short of an agreement to give time, which binds the creditor and prevents his bringing suit, will discharge the surety." As we have observed, there was no agreement to extend the payment of the note in suit for any definite time, and therefore the bank was not prevented from bringing suit at any time, and the judgment of the court below must be reversed for this reason.

Another point was made, however, though not determined by the court, notwithstanding it was reserved, which, if sound, would still defeat the plaintiff's right of recovery. It grew out of the fact that Lowenstein continued to do business with the bank, and had at various times sums on deposit with the plaintiff sufficient to pay the note. It is contended that these funds being within the power

of the plaintiff, an obligation arose to appropriate them to the payment of the note, as in favor of the indorser, and this not being done, the latter was discharged. We do not think so. While it is true that a bank is a mere debtor to its depositor for the amount of his deposit, and, therefore, in an action by the bank against the depositor, on a note upon which he is liable, the latter may set-off his deposit, yet we do not think the bank is bound to hold a deposit for the protection of an endorser of the depositor. A bank deposit is different from an ordinary debt in this, that from its very nature it is constantly subject to the check of the depositor, and is always payable on demand. The convenience of the commercial world, the enormous amount of transactions by means of bank checks, occurring on every business day in all parts of the country, require that the greatest facilities should be afforded for the use of bank deposits by means of checks drawn against them. The free use of checks for commercial purposes would be greatly impaired, if the banks could only honor them on peril of relieving indorsers, without an investigation of the state of the depositor's liabilities upon discounted paper. This question does not seem to have frequently arisen in the courts, but in three cases out of four, to which we have been referred, the right of the bank to pay out the deposit of the party in default on his paper, without relieving the indorser, has been affirmed.

Thus in Maryland, in the case of Martin *v.* Mechanics' Bank, 6 Harr. & Johns. 235, in an action on an inland bill of exchange, by an incorporated bank, as the holder of the bill which they had discounted before it became due, against the payee, evidence was given that the acceptors of the bill, on the day it became due and for a long time before, and for several months thereafter, kept an account at the said bank, by depositing, and from time to time checking out money, and that on the day the bill became due they had no money in bank, but that about a month afterwards a balance was struck between the bank and the acceptors, when they had a sum of money sufficient to have discharged the bill, *Held*, that the bank was entitled to recover the amount of the bill from the payee, that the conduct of the holders of the bill with regard to the acceptors, was not a waiver of their right against the indorsers, nor a release as to them. And as between the holders and the acceptors, there was no payment. The case was elaborately argued by counsel and fully considered by the court. It was held that a deposit of money in a bank by a regular depositor is not to be regarded as an appropriation by him of the money deposited, to the payment of an existing indebtedness of his, but rather for the mutual benefit and convenience of the bank and the depositor, "according to the common course of business in our moneyed

institutions." On p. 247, the chief justice said, " The mere placing money in bank on deposit by the Messrs. Woods, had not of itself the effect to discharge the appellant from his liability as indorser of the bill : and the not diverting, by the plaintiffs, the money, from the purpose for which it was so placed and received by them in bank, and applying it to the payment of the bill, was not more to the prejudice of the indorsers than their forbearing to sue the acceptors, and did not amount in law to a waiver of their right of action against either of the parties." In Voss v. The German American Bank, 83 Ill. 599, it was held that where the principal on a note payable to a bank, has funds on deposit in the bank after maturity, more than sufficient to pay it, the omission of the bank to appropriate the deposit to the payment of the note will not discharge the surety. In New York, in the case of The National Bank of Newburgh v. Smith, 66 N. Y. 271, it was held, that where, after the maturity of a promissory note held by a bank, and due protest and notice thereof, the maker makes a general deposit in the bank, of an amount sufficient to pay the note, this does not of itself as between the bank and an indorser operate as a payment. In the absence of any express agreement or directions, it is optional with the bank whether or not to apply the money in payment, it is under no obligation to do so. The case of McDowell v. The Bank of Wilmington, 1 Harrington 369, in the state of Delaware, holds the contrary doctrine, but we think the better reason is with the three preceding cases above cited. It is beyond question that the bank, in the absence of any special appropriation of the deposit by the depositor, would have the right to apply a general deposit to the payment of any existing, matured indebtedness of the depositor. But that privilege is a right which the bank may or may not exercise in its discretion. As before stated, a bank deposit creates a form of indebtedness of a peculiar and exceptional character. It is thus stated in Morse on Banks and Banking, p. 35 : " The bank is under the obligation of honoring the customer's drafts and checks whenever the same are presented for payment, provided that at the time of such presentment the balance of the account, if then struck, would show a credit in favor of the customer of funds, on which the bank has no lien, sufficient to meet the sum called for by the check or draft. The contract so to honor the depositor's orders is implied from the usual course of business. The deposit is made with the tacit understanding that the bank shall respond to the depositor's orders, so long as there is sufficient balance to his credit." It may well be that special circumstances may exist in particular cases, which will convert into an obligation or legal duty, as to indorsers and others contingently liable, that which would otherwise be a mere privilege

[Peoples' Bank of Wilkes-Barre *v.* Legrand.]

of the bank. Thus an original direction by the maker, or an agreement between the maker and indorser on the one hand, and the bank on the other, that general deposits of the maker should be applied in discharge of the indorsed paper after maturity, or possibly a course of dealing to that effect, might suffice to create such an obligation. But in the absence of such circumstances, and of special directions, we think that general deposits made after maturity of the depositor's obligation, are to be treated in the same manner, subject of course to the option of the bank, as the same class of deposits made at any other time and before maturity, that is, according to the general usage and understanding prevailing in the commercial world.

We fully recognize the rule that where a principal creditor has the means of satisfaction actually or potentially within his grasp, he must retain them for the benefit of the surety, but we regard the case of bank deposits as an exception to the rule. We are not prepared to say, and do not hold, that when the bank has funds of the maker in hand, at the time of bringing suit, the endorser may not avail himself of the maker's right of set-off in defence. In such a case the equities of the maker touch the holder directly, and are available to the indorser. Such was the decision of this court in the case of Sitgreaves *v.* The Bank, 13 Wr. 362, and we know of no reason why that doctrine would not be as applicable to the case of a deposit, as to any other form of obligation by the bank to the maker. But in the present case the doctrine is inapplicable, because at the time of bringing this suit it does not appear that the plaintiff held any money of Lowenstein on deposit. In addition to this, it was part of the agreement for extension of the time of payment between Lowenstein and the bank, that he should continue to do business with the bank. If he could not draw out funds deposited, he could not do banking business, and we think there is a clear implication from the agreement for extension, that Lowenstein was to be at liberty to draw against his future deposits, notwithstanding the dishonor of the note in suit. Such an understanding would operate against the right of the bank to appropriate such deposits to the payment of the note. In view of these considerations we think the learned court below was in error in not entering judgment in favor of the plaintiff for the amount of the note and interest on the points reserved, in accordance with the verdict of the jury.

> Judgment reversed, and now judgment is entered on the verdict in favor of the plaintiff and against the defendant for twenty-nine hundred and seventy-seven $\frac{45}{100}$ dollars with interest from the date of the verdict and costs of suit.