# Campbell v. Floyd et al., Appellants.

*Partnership—Dissolution—Powers of liquidating partner.*

Where a partnership is dissolved by death, and one of the survivors assumes the duty of liquidating partner with the knowledge of his late copartners who make no objection, the latter will be bound by his acts.

*Banks and banking—Liquidating partner—Statute of limitations.*

A partnership was engaged in the banking business under articles of association containing provisions looking to a continuance of the business by the survivors in case of the death of any member. One member died and some of the survivors continued the business without objection by the others. Plaintiff, a depositor, allowed his deposit to remain in the bank after the death of the member, and received interest regularly thereon. *Held,* that the payment of interest by the partners who continued the business prevented the running of the statute of limitations as to the others, if the partnership was dissolved by the death of a member; but whether so dissolved not decided.

*Special statute of limitations of March 28, 1867—Partnership—Corporations.*

The act of March 28, 1867, providing that suits at law or in equity shall

not be maintained against stockholders or directors in any corporation or association to charge them with liabilities of the corporation, or with any neglect of duty, except within six years after the liability has accrued or the neglect occurred, does not apply to an ordinary partnership, although the articles of association of such partnership provide for a board of directors, and designate the members as stockholders.

The plain import of the language of this statute is that the associations whose stockholders are protected are such as can be sued without the joinder of their members, and the subjects of the suits barred are claims for which the associations are primarily, and the stockholders secondarily, liable: Per HEYDRICK, J.

*Principal and surety—Withdrawal of partner from firm—Assumption of debts by remaining partners.*

Where a partner withdraws from the firm, and the remaining partners assume its debts, the retiring partner becomes a surety to the firm creditors for the debts contracted before his withdrawal.

*Discharge of surety—Forbearance to sue—Extension of time.*

In such a case mere forbearance to sue will not discharge the surety; nor will he be discharged by an agreement for an extension of time, unless such an agreement be upon sufficient consideration, and the time of payment definitely fixed.

In an action by a depositor against a partnership engaged in the banking business, one of the defendants averred in his affidavit of defence that he withdrew from the firm in 1887, whereupon the remaining partners assumed the debts and continued the business thereof, and that plaintiff with full knowledge of the facts continued his deposit with them and received from them interest thereon at the same rate which had been previously agreed upon. *Held*, (1) that the affidavit disclosed facts which constituted defendant a surety for the payment of the deposit; and (2) that the continuance of the deposit was a mere forbearance which did not discharge him from liability.

*Practice—Entry of judgments against several defendants—Act of Aug. 2, 1842—Liquidation—Amendment.*

Under the act of August 2, 1842, P. L. 459, authorizing the entry of judgment at different times against several defendants in the same action, judgment may be entered against some of the defendants for want of a sufficient affidavit of defence, while a rule for judgment is discharged as to others, but the liquidation of the judgments must be postponed until the final disposition of the case.

In such a case if the liquidation of the judgment has been made by the prothonotary, the lower court will strike it off, or the Supreme Court will treat it as amended.

Argued Oct. 27, 1892.   Appeals, Nos. 62, 63, 64, 65, 66 and 67, Oct. T., 1892, by S. B. Floyd et al., from order of C. P. No. 1, Allegheny Co., Dec. T., 1891, No. 466, making absolute

a rule for judgment against some of defendants, and discharging rule for judgment against the others, in suit by S. K. Campbell against defendants, trading as the American Bank. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Assumpsit to recover the amount of a bank deposit.

Plaintiff's statement was as follows:

"S. K. Campbell, plaintiff, complains of the defendants, William Floyd, Thomas Floyd, S. B. Floyd, Louis Peterson, Jr., Stephen Stewart, James Bovard, C. L. Rose, J. G. Wainright, J. W. Arrott, Graham Scott, Edward House, Archibald Wallace, Chas. F. Klopfer and H. J. Murdoch, partners doing business as the American Bank, and says:

"That the defendants were associated together as partners, carrying on a general banking business in the city of Pittsburgh under the name of American Bank.

"On the 13th of May, 1871, as shown by defendant's books, plaintiff made a deposit in the American Bank of the sum of $2,000, under an arrangement with the duly authorized officers of said bank whereby plaintiff was to be paid interest on said deposit and should not withdraw the same without giving the bank 30 days' notice of plaintiff's intention to withdraw said deposit. The interest was paid semi-annually up to May 13, 1887, and there remains due interest on $2,000 from May 13, 1887, to Nov. 26, 1887, at 4 per cent, and lawful interest from that date as hereinbefore stated. On August 29, 1879, as shown by defendant's books, plaintiff made another deposit with defendants, doing business as American Bank, of the sum of $2,500, under the same terms and conditions as above set forth, made with the duly authorized officers of said bank. Interest was paid on said deposit to Aug. 29, 1887, and there remains due interest on said $2,500 from Aug. 29, 1887, to Nov. 26, 1887, at 4 per cent, and lawful interest from that date, as hereinafter stated.

"On Nov. 26, 1887, said bank failed, and all the partnership assets placed in the hands of a receiver.

"That on Nov. 26, 1887, plaintiff had on deposit the before-mentioned sum of $4,500, together with the sum of $22.03 (in all $4,522.03), which $22.03 was a balance of a current account

kept with defendants, subject at all times to check, and was opened on Aug. 6, 1878, and continued to the time the bank closed, and the books of defendants show this balance to be due plaintiff on this account.

" On Nov. 11, 1889, plaintiff received on account of the above interest and indebtedness from the receiver the sum of $1,470.48. On Oct. 8, 1891, plaintiff received a second dividend on the same account, the sum of $765.03, leaving a balance due plaintiff, the sum of $3,262.17, with interest from Oct. 8, 1891, and therefore brings suit."

The material averments of the affidavits of defence appear by the opinion of the Supreme Court. The court, in an opinion by STOWE, P. J., made absolute a rule for judgment for want of a sufficient affidavit of defence against James W. Arrott, C. L. Rose, James Bovard, Lewis Peterson, Jr., and Samuel B. Floyd, and discharged a rule for judgment against the remaining defendants who, it appeared, had withdrawn from the firm prior to the death of John Floyd in 1881. The judgment was thereupon liquidated.

*Errors assigned* were (1) in making absolute the rule for judgment against S. B. Floyd et al.; (2) in discharging the rule for judgment against C. F. Klopfer et al.

*M. A. Woodward* and *Isaac S. Van Voorhis*, with them *Samuel McClay* and *C. C. Dickey*, for appellants.—The association known as the American Bank was within the terms of the act of March 28, 1867: Pittsburgh Savings Bank, Stockdale, v. Keyes Bros., 79 Pa. 251.

The word association, as used in the act, does not mean ordinary or include all partnerships. It refers only to those partnerships that receive deposits, borrow money, purchase materials or merchandise, and have stockholders and directors. The act undoubtedly refers to banking institutions, because it uses the language of banks. They receive deposits, and have stockholders and directors. It does not embrace limited partnership, as the act of 1836 expressly forbids limited partnerships engaging in a banking business. Unincorporated banks, like the American, were recognized and called associations in the case of the Farmers' Bank of Lancaster, Myers v. Irwin, 2 S. & R. 368; Farmers' & Mechanics' Bank of Fayette, Hess v.

Werts, 4 S. & R. 356 ; Citizen's Bank, Shamburg v. Abbott, 112 Pa. 6 ; Shamburg v. Ruggles, 83 Pa. 148 ; Bedford County Bank, Miller's Ap., 142 Pa. 565.

An association such as this was constantly changing, members going out by withdrawal, transfer of stock, death, bankruptcy and otherwise, and new stockholders coming in, none of whom would be bound for the debts and engagements of the association contracted prior to the time they became members thereof.

The plaintiff's right of action is barred by the statute of limitations of March 27, 1713 : 3 Kent's Com., p. 56 ; Crosskill v. Bower, 32 Beavan, 86 ; Eustis v. Bolles, 146 Mass. 413 ; Marlett v. Jackman, 3 Allen, 287 ; Knerr v. Bradley, 105 Pa. 190 ; Levy v. Cadet, 17 S. & R. 126 ; Reppert v. Colvin, 48 Pa. 248 ; Wilson v. Waugh, Jack & Co., 101 Pa. 233 ; Houser v. Irvine, 3 W. & S. 345.

To take a case out of the statute of limitations there must be an express unqualified promise or acknowledgment of a subsisting debt: Eckert v. Wilson, 12 S. & R. 393 ; Gleim v. Rise, 6 W. 44; Yaw v. Kerr, 47 Pa. 333 ; Senseman v. Hershman, 82 Pa. 83.   And it must be so distinct and palpable in its extent and form as to preclude hesitation about the debtor's meaning: Wolfensberger v. Young, 47 Pa. 516 ; Miller v. Baschore, 83 Pa. 356 ; McKinney v. Snyder, 78 Pa. 497.

If defendants against whom the rule was made absolute are legally bound to pay plaintiff the amount of his alleged deposit, then the rule as to J. G. Wainwright, Graham Scott, Edward House, Archibald Wallace and C. F. Klopfer was wrongfully discharged.   They were members of the said bank at the time of the making said deposit, and we claim never legally assigned or withdrew from the same : Walstrom v. Hopkins, 103 Pa. 118.

A. M. Imbrie, for appellee.—The act of March 28, 1867, has no application to banking partnerships or associations such as this: Rhoads v. Association, 82 Pa. 180 ; Hess v. Werts, 4 S. & R. 362.

The statute does not begin to run against a deposit until demand is made : Girard Bank v. Bank, 39 Pa. 98 ; Finkbones' Ap., 86 Pa. 368.

The " old creditors had to look to the individuals who com posed the old firm: " Christy v. Sill, 131 Pa. 492.

It may be that when a partner withdrew or died, a dissolution took place as to the outgoing partner or the estate of the deceased partner, but as to those who remained, the partnership continued. Where the stockholders have no title to the assets of the partnership, but merely a resulting interest ascertainable only by an account, such company is not dissolved by the death of a member: Oliver's Ap., 136 Pa. 43; Leaf's Ap., 105 Pa. 505.

The authority to act as a liquidating partner does not require an express or specific appointment from the other partners. Their permission may be presumed, and as to third persons their acts are binding: Fulton v. Bank, 92 Pa. 115; Kauffman v. Fisher, 3 Grant, 305.

When an ostensible or known member of a copartnership retires and wishes to shield himself from liability for future debts of the firm, it is necessary that personal notice of his withdrawal be given to all who have had dealings with the firm, and that notice be given by publication or otherwise to all others: Clark v. Fletcher, 96 Pa. 418; Shamburg v. Ruggles, 83 Pa. 151; Hallstead v. Coleman, 143 Pa. 363.

When a copartnership is formed and an artificial name, such as is usually employed to designate a corporation, is adopted, it must be regarded as an invention to give credit, not to the empty name, but to the individuals who compose the association thus designated, and hence none of the partners can properly claim to be dormant. They are all, presumptively at least, known partners and liable as such: Clark v. Fletcher, 96 Pa. 419: Forepaugh v. Baker, 21 W. N. 299.

OPINION BY MR. JUSTICE HEYDRICK, January 3, 1893:

The appellants, together with several other persons, are sued as copartners, doing business under the name American Bank, to recover moneys which the plaintiff deposited with them as bankers at various times from the fifteenth day of September, 1870, until the ninth day of October, 1882. They do not deny that the partnership existed as alleged at the time the deposits, except the last two, aggregating $330, were made; nor do they deny that the deposits were made and received in the course of the business of the copartnership, but they contend that, for reasons that will be noticed, they have been discharged from liability to the plaintiff.

Two of the appellants say that one John Floyd was a member of the copartnership from the time of its organization until October 2, 1881, when he died; that by his death the partnership was dissolved, and thereupon an action accrued to the plaintiff to recover his deposits; that although some of the members of the firm continued to manage the bank until it suspended November 25, 1887, they never consented thereto, or, after the death of John Floyd, expressly or impliedly promised to pay the plaintiff; by reason whereof they insist this action is barred as to them by the statute of limitations. The articles of association of this firm contain some provisions looking to the continuance of the partnership by the survivors in case of the death of a member, as well as by the remaining members in case of a sale and transfer of the interest of any of their fellows. It is, however, unnecessary to decide whether, in view of these provisions, the death of John Floyd had or had not the ordinary effect in this respect of the death of a partner. It may be conceded for the present that it had.

If the partnership was dissolved, each of the surviving members owed some duties to the others as well as to the common creditors. *In societatis contractibus fides exuberet* is the language of the civil law, and applies as well to the winding up of the business of the firm after its dissolution as to its conduct before. It is the right of each partner to have the assets of the firm applied to the discharge of its debts, and the residue, if any, divided among those entitled thereto; and it is the duty of those having custody of the assets to so apply them; they cannot in good faith to their fellows run away and leave them. And when one, in whose keeping the assets are, assumes the duty of liquidating partner, good faith equally requires that the others shall hold themselves bound by what is done, or object promptly and show why it ought not to be done. " The authority to act as a liquidating partner does not require an express and specific appointment. When one so acts with the knowledge of his late copartners their permission may be presumed, and as to third persons they may be bound by his acts: " Fulton v. Central Bank of Pittsburgh, 92 Pa. 112.

According to the affidavits of defence William Floyd and other survivors continued the business after the death of John Floyd, and it is not alleged that any objection was made thereto.

In the ordinary course of such business, if prudently conducted, all the old liabilities would eventually be discharged, and the new liabilities incurred would not bind the late partners who did not agree to be bound. Thus a liquidation to that extent would be accomplished, and it has not been pointed out that it was not in this case and would not ordinarily be the most advantageous mode of liquidation—especially advantageous to the non-liquidating partners. Indeed, if these appellants believed the partnership dissolved by the death of John Floyd and knew the bank to be insolvent, as they now allege it was, it would not be a strained presumption that they looked with quiet satisfaction upon what their late partners were doing. Enough appears in their conduct as it is represented in their affidavits to hold them to have given authority to the others to act as liquidating partners, and they are consequently bound by all the acts of the latter within the scope of the business committed to them.

It was held in Estate of Davis & Desauque, 5 Wh. 530, that a liquidating partner may borrow money on the credit of the firm for the purpose of paying the debts of the firm; and if the credit is given in good faith, though with a knowledge of the dissolution, and the money is applied to the liquidation of the joint debts, the creditor has a claim against the firm. The substantial effect, in one respect, of such borrowing is to renew a debt which may be about to be barred by the statute of limitations, and thus toll the statute. This case was followed by Houser v. Irvine, 3 W. & S. 345, in which it was held that a liquidating partner may give a note in the partnership name in settlement of partnership debts, and that a payment made by him upon the note so given within six years after its maturity must be attended with the consequences of a payment by all the partners, and is therefore evidence of a promise by all. These cases have been approved in Dundass v. Gallagher, 4 Pa. 205; Brown v. Clark, 14 Pa. 474, and Kauffman v. Fisher, 3 Grant, 302, in the latter of which it was held, as a logical sequence from the preceding cases, that the payment of interest upon a note by a liquidating partner " kept the note alive as to the firm, and the firm as to the note." In the present case a copy of plaintiff's bank book was filed with his statement, showing that interest was paid on the deposits every year after the

death of John Floyd until 1887; and the entries in that book were averred to have been made by the defendants sued. The appellants do not deny the payment of interest or the making of the entries thereof in the book by some of the defendants; their denial in this respect being simply that the affiants made the entries. Taking the affidavits in connection with the statement and its accompanying account, they must be regarded as admitting payment of interest by the liquidating partners. The statute of limitations cannot, therefore, be successfully pleaded.

Another of the appellants sets up, in addition to the general statute of limitations, the act of March 28, 1867, which provides that "no suit at law or in equity shall be brought or maintained against any stockholder or director in any corporation or association to charge him with any claim for materials or moneys for which said corporation or association could be sued, or with any neglect of duty as such stockholder or director, except within six years after the delivery of the materials or merchandise or the lending to, or deposit of money with said corporation or association, or the commission of such act of negligence by such stockholder or director;" and says that the American Bank, having provided in its articles of association for the election of a board of directors by which its business was to be conducted, and called its members stockholders, is an association within the intendment of this act.

The plain import of the language of this statute is that the associations whose stockholders are protected are such as can be sued without the joinder of their members, and that the subjects of the suits barred are claims for which the associations are primarily, and the stockholders secondarily, liable. It contemplates that liabilities might be enforced by action against the associations primarily liable more than six years after they accrued, otherwise there was no need of the legislation, and it does not bar such actions. The statute is therefore clearly applicable to the shareholders in a corporation who are by its charter made individually liable to any extent whatever upon its contracts. But an unincorporated association has no capacity to be sued as an entity distinct from its members. The name which it adopts merely stands for the names of its members as a matter of convenience. Suits at law can be main-

tained upon its contracts only by and against the persons composing it, except where and to the extent to which it has been otherwise provided by statute. Story on Partnership, sec. 241 and cases cited in note. So necessary at common law was the joinder of all the members of a partnership in a suit upon a partnership liability that it required a statute in Pennsylvania to take away the right to plead a nonjoinder in abatement, and it may still be pleaded if the partnership has complied with the provisions of the 13th section of the act of April 14, 1851, P. L. 615. As a consequence, when an action against the members of a partnership is barred, all remedy is gone. There is no such thing as a secondary liability of the members of a partnership to be barred by the statute without affecting the remedy upon the primary liability of the firm. Therefore the members of such an association as the American Bank was, which is conceded to have been a partnership, are not within the purview of the act of 1867, but the word " association " must be held to have been used by the legislature as a synonym for corporation.

Another of the appellants says that in the month of June, 1887, he sold and transferred his interest in the American Bank to William Floyd, who with others, upon their own responsibility, continued to carry on the business of banking under the name of the American bank, and assumed the debts of the old partnership; " That with the said William Floyd and others the plaintiff saw fit to transact business and continue his deposits; " and " not only continued to transact business with the new partnership, but . . . . with full knowledge of the facts . . . . agreed to loan his money to the new partnership and receive interest for the use thereof by the new partnership at the rate of three per centum per annum, and actually did receive such interest; " whereby he says the plaintiff discharged him from further liability for any deposits that he may have had in the bank at the time he sold out. He follows this with a formal denial of the existence of a partnership at and during the time the deposits were made. This denial, however, is so inconsistent with the implied admission of the existence of the partnership running through all the specific averments of the affidavit that it must be disregarded. And so must be the averment that the plaintiff continued to transact business with and loan his money to the new partnership, because it is

not a distinct averment that he "agreed to loan to the new partnership" the particular money to recover which this suit was brought.

Taken altogether this affidavit fairly avers that the affiant withdrew from the firm in 1887, whereupon the remaining partners assumed the debts and continued the business thereof, and that the plaintiff with full knowledge of the facts continued his deposit with them and received from them interest thereon at the same rate which had been previously agreed upon. A release by contract upon any consideration moving from the affiant to the plaintiff is not alleged. If, then, the plaintiff is precluded by the facts stated from recovering from this appellant what is admitted to have been a debt owed by him and his codefendants jointly, it must be upon the theory that when he retired from the partnership and the remaining partners assumed the debts thereof his relation, ipso facto, changed from that of principal debtor to that of surety for his late associates, or that the continuance of the deposit with the new firm and acceptance of interest from it with knowledge of the facts was a novation of the debt. The theory of a shifted relation in the case of a retiring partner, when the remaining partners assume the debts, has direct or indirect sanction in many cases collected in the note to section 158 of Story on Partnership, to which cases may be added Shamburg v. Abbott, 112 Pa. 6, and is supported by reason. Assuming then the relation of this appellant to have become that of surety, what is there in the facts alleged to discharge him? Mere forbearance, however prejudicial to the surety, will not release him: U. S. v. Simpson, 3 P. & W. 437. Nor will indulgence, accompanied by payment of interest by the debtor and a promise of punctuality in the future, have that effect, if the creditor's hands are not tied: Johnston v. Thompson, 4 Watts, 446. And while a surety may be discharged by an agreement between the creditor and the principal debtor for an extension of the time of payment, the essential elements of a contract must be present; not only must the agreement be upon a sufficient consideration, but the time of payment must be definitely fixed; otherwise the surety will not be discharged: Miller v. Stem, 2 Pa. 286; Brubaker v. Okeson, 36 Pa. 519; Peoples Bank v. Legrand, 103 Pa. 309. So also may a surety as well as a principal debtor

be discharged by the intervention of a new debtor, and in that case it will be immaterial whether the time of payment be changed or not, but to make the novation complete not only must a third person become debtor in place of the former debtor as between himself and the former debtor, but he must be accepted by the creditor as such.

In the present case it is not alleged that the plaintiff entered into a binding contract to give any extension of time whatever, nor are there any facts stated sufficient to justify the submission of the question of novation to a jury. The continuance of the deposit with the new firm was simply leaving it where it was when the appellants were confessedly bound—mere forbearance; and the payment of interest thereon by the remaining partners, which appears in the plaintiff's statement, is not evidence of a new contract simply because they were already bound to pay it. And even if a stranger had been introduced into the new firm, the payment of interest would not have been sufficient to charge it with the debt: Shamburg v. Ruggles, 83 Pa. 148; Christy v. Sill, 131 Pa. 492; much less would it be full evidence of a release of the retired partner, since the creditor had a right to receive the interest due him from anybody who would pay it, and to so receive it would not be prejudicial to the debtor. For the same reason the receipt of a dividend from the receiver of the bank would not discharge parties who were benefited by its payment: Story on Partnership, § 158.

Except as to the matters of defence set up by the other appellants and already considered, the affidavit of Samuel B. Floyd is evasive and requires no farther consideration.

The affidavits of defence of these appellants being insufficient the plaintiff was entitled to judgment against them. Whether he was entitled to judgment against the other defendants, who make defence upon other grounds sustained by the learned court below, cannot be determined in their absence and needs not to be determined to justify the judgment appealed from. As was said by GIBSON, C. J., in O'Neal v. O'Neal, 4 W. & S. 130, " the symmetry of legal proceedings has yielded in England to legislative measures of convenience, and in our own state much more so to similar measures in cooperation with the inattention to things of subordinate importance so remarkably evinced by the profession." A striking

example of such measures is found in the 6th and 7th sections of the act of August 2, 1842, P. L. 459. By the 6th section it is enacted, " that in all original actions and proceedings to revive judgment which have been or hereafter may be insti- tuted against two or more defendants in which judgment has been entered on record against one or more of said defendants by confession or otherwise, or hereafter may be so entered, the entries so made or to be made shall be considered good and valid judgments against all the defendants as of the date of the respective entries thereof, and the day of the date of the last entry shall be recited in any subsequent proceedings by scire facias or otherwise as the date of judgment against all of them, and judgment rendered accordingly; provided that the provisions of this act shall not affect the liens of any such judgment." The 7th section provides that " such entries " at different periods " shall operate as good and valid judgment against all the defendants, and the plaintiff may proceed to the collection of the money due thereon with costs, as if the en- tries had all been made at the date of the latest entry."

The statute was not needed to authorize the entry of in- terlocutory judgments against defaulting defendants before final judgment could be entered against them and others as to whom an issue might have to be tried. That could be done at common law. It seems rather to have been rendered necessary by a practice which, from a small beginning in harmony with the common law, had come to produce incongruous results. In Lewis v. Smith, 2 S. & R. 142, it was held that when the plaintiff's demand is in the nature of a debt which may be ascertained by calculation, or arises upon a note or other writ- ing, or on an account, and the defendant confesses the action, a judgment entered generally without stating the amount was a final judgment. This doctrine was subsequently extended to judgments by default in actions where the claim is for a sum certain, or can be ascertained by calculation from the demands set forth in the declaration, or accompanying writings required by rules of court, upon the principle that a default is a con- fession of the action. Com. v. Baldwin, 1 Watts, 54; Sellers v. Burk, 47 Pa. 344; Fulton's Estate, 51 Pa. 204; Clark v. Dotter, 54 Pa. 215.

So long as there was but one defendant, or there being more

than one all confessed or made default and the same judgment was entered against all there would of course be but one final judgment in any action. But when in an action against numerous defendants judgment is taken against one in default of an appearance, against another in default of an affidavit of defence, against a third ˏin default of a plea, and against the remaining defendants upon the verdict of a jury, results are produced which could not have been in contemplation of the court when judgments by default in the class of actions referred to were declared to be final. The severance of the plaintiff's demand by the entry of the first of such final judgments was fatal at common law, and no statute had authorized it. But it was desirable upon the one hand that such several judgments should be sanctioned for the purpose of lien, and on the other hand that the symmetry of the common law proceeding should be restored by blending them into one for all other purposes upon the final determination of the cause. This was accomplished by the statute under consideration.

The liquidation of the judgment before determination of the remaining issues, was, however, premature. As the statute contemplates but one judgment for purposes of execution and revival by the blending of several, as of the date of the latest, it cannot be presumed that the legislature intended to authorize the incongruity of successive liquidations ordinarily producing different results in consequence of the difference in accrued interest. It was not necessary for the purpose of lien. The 3d section of the act of March 29, 1827, P. L. 155, requires the prothonotaries to copy every judgment, whether liquidated or not, into the judgment docket immediately after it shall have been entered ; and such unliquidated judgments, where the ascertainment of the amount is a mere matter of computation, have been held to be liens from the date of entry. Commonwealth v. Baldwin, supra ; Sellers v. Burk, supra. But the liquidation being the act of the prothonotary is amendable by striking it out in the court below, or treating it as amended here. Finch v. Lamberton, 62 Pa. 370.

The judgment is affirmed.                    ◌