[File No. 5920.]

FIRST STATE BANK OF MAX, a Corporation, Respondent, v. ARTHUR STEINHAUS and Milt Smith. ARTHUR STEINHAUS, Appellant.

(237 N. W. 852.)

Opinion filed August 13, 1931.

*L. J. Palda, Jr., C. E. Brace* and *Robert W. Palda,* for appellant.

*Williams & Lindell,* for respondent.

ENGLERT, Dist. J.   On March 11, 1929, the plaintiff brought this action against Arthur Steinhaus and Milt Smith, to recover on three promissory notes.   One of the notes, dated December 1, 1921 was for $1,200.00; the other two, each dated December 20, 1921, were for $1,500.00 and $2,000.00 respectively.   The three notes became due on the same date, December 1, 1922.

The defendant, Milt Smith, did not answer, and judgment was taken against him by default.   The defendant, Arthur Steinhaus, answered the complaint, and set forth the statute of limitations as a defense. The case was tried to the court without a jury.   The trial court entered judgment in favor of the plaintiff and against the defendant, Steinhaus, for the sum of $6,752.55.   From that judgment, he appealed to this court.

The notes were signed by Milt Smith, Arthur Steinhaus and John M. Peterson. They were renewals of notes given by the same parties for money borrowed from the plaintiff bank. The money thus borrowed was used in the purchase of cattle. The cattle were placed in the care and keeping of Milt Smith.

The trial court found that the notes represented debts of the partnership, composed of Arthur Steinhaus, Milt Smith, "and others." The court further found that Milt Smith, on October 21, 1925, paid $168.27 on the $1,500.00 note; that on December 30, 1925, he paid the interest on the $1,200.00 note; and on March 15, 1928, he paid the interest on the $2,000.00 note. The court further found that the payments were made from money belonging to the partnership, and that Steinhaus consented to and approved the payments.

Appellant challenges those findings. With regard to the partnership, the record shows that, in 1919, a partnership was formed between Arthur Steinhaus, Milt Smith, John M. Peterson and C. W. Morton, for the purpose of buying cattle. Appellant testified: "Q. The signers of the notes, were they the cattle company? A. There was four of us in the beginning, Mr. Morton was a silent partner." His counsel said: "We admit buying cattle in 1919."

C. W. Morton was cashier of the plaintiff bank. The other three signed notes and borrowed money thereon from said bank, with which to carry on the said cattle business. Appellant issued checks and signed the firm name as "Steinhaus-Smith-Peterson," or "Cattle Company By Art Steinhaus." He further testified: "Q. You were copartners in these cattle? A. In the beginning. . . . Q. You say in the beginning you were copartners in these cattle? A. Yes sir. Q. There still are some cattle belonging to this company? A. I think so." These facts, all coming from the appellant himself, are amply sufficient to support the finding of the trial court, that a partnership existed at the time the notes were signed, and that they were executed for partnership purposes.

C. W. Morton testified that Milt Smith made the payments on the notes as found by the trial court, and that the same were made out of partnership funds. He had been urged by Morton to make shipments, and apply the proceeds on the notes. While Steinhaus denied any

knowledge of such payments having been made, he admitted that Smith is still in possession of cattle belonging to the partnership.

The partnership and payments having been established, the question of whether Steinhaus consented to and approved the payments is not material. Though we were to give appellant the benefit of that controverted fact, the result, will be the same.

Appellant contends that whatever partnership existed at the time of the signing of the notes, the same was dissolved before the payments were made, and that such payments do not toll the statute of limitations as to him. Under the law of this state, a partnership is dissolved "by the death of a partner." Subdivision 3 of § 6415, Comp. Laws 1913. It is admitted that John M. Peterson, one of the partners, died and though the date of his death is not shown it is generally conceded that he died before the payments involved were made by Milt Smith.

The principal legal question, then, is whether the payments made by Milt Smith on the notes, after dissolution of the partnership, interrupted the running of the six year statute of limitations as to all the members of the firm. By the statute of this state, § 6403, Comp. Laws 1913, each partner has authority to bind the others by his act or contract within the scope of the partnership business.

The power and authority of partners, after the dissolution of a partnership, are such only as are prescribed by §§ 6420 to 6425 inclusive of the Comp. Laws 1913. By these sections any member of a general partnership may act in liquidation of its affairs; and if the liquidation is committed by the consent of the partners to one or more of them the others have no right to act therein. Comp. Laws 1913, §§ 6421 and 6422.

The evidence in this case shows that Milt Smith was in the possession of the partnership property at the time of making the payments; that there are firm assets in existence and that Smith has possession thereof; that he has sold and disposed of partnership property and is engaged in the liquidation of the partnership.

In Fulton v. Central Bank, 92 Pa. 112, the court said: "The authority to act as liquidating partner does not require any request or specific appointment. Where one so acts with the knowledge of his late copartners, their permission may be presumed; and, as to third persons, they are bound by his acts."

In Campbell v. Floyd, 153 Pa. 84, 25 Atl. 1033, the court said: "And when one, in whose keeping the assets are, assumes the duty of liquidating partner, good faith equally requires that the others shall hold themselves bound by what is done, or object promptly and show why it ought not to be done." No express authority or request is necessary to authorize a member of the firm to act as liquidating partner. The record in this case justifies the conclusion that Smith was acting in that capacity. Therefore, whether he acted by specific direction, or with the consent of the other persons by tacit approval is immaterial. Smith was the liquidating partner.

Section 6423 of the statute says: "A partner authorized to act in liquidation may collect, compromise or release any debts due to the partnership, pay or compromise any claims against it, and dispose of the partnership property." It is true that under the provisions of § 6427 of the Comp. Laws 1913, such liquidating person cannot "create any new obligations in its name, or revive a debt against the firm by an acknowledgment, when an action thereon is barred under the provisions of the Code of Civil Procedure;" but Smith was not creating a new obligation by making payments upon the old. He was acting as a liquidating partner under the authority conferred by statute. He made payments on the firm notes, out of partnership funds, before they had been barred by the statute of limitations. By some authority the giving of new notes for a firm debt may be regarded as a new contract, which a partner, after dissolution, has no authority to make. By making payments on existing partnership notes, no new contract is created. Such payments merely prolong or continue the existing obligation of the firm, as originally made by all the partners. It is merely extending the life of a living obligation of the partnership.

In Kauffman v. Fisher, 3 Grant, Cas. (Pa.) 302, it was held that payment of interest on a note by a liquidating partner, "kept the note alive as to the firm, and the firm as to the note." Under the law there is a distinction between the authority of a liquidating partner to revive a debt barred by the statute, and the tolling of the statute in instances where the debt is not barred. The supreme court of Pennsylvania, in the cases cited, held that a liquidating partner has authority to make payments upon existing firm debts and thus form a new point from

which the statute of limitations begins to run as against all of the members of the firm.

In Houser v. Irvine, 3 Watts & S. 345, 38 Am. Dec. 768, the court held that a liquidating partner retains his former power to bind the firm in respect to matters within the scope of the partnership business committed to him, and that making a payment upon an existing firm debt is within the scope of such authority, and tolled the statute of limitations as to the other members of the firm. See also Campbell v. Floyd, 153 Pa. 84, 25 Atl. 1033, and Walker v. Wait, 50 Vt. 668.

While there may be conflict among the authorities upon the subject under consideration here, the natural intendment of our law is that a partial payment, by a liquidating partner, out of firm assets, upon partnership notes, not barred by the statute of limitations, after dissolution of the firm, starts anew the running of the statute as to the other partners.

The judgment of the trial court therefore is affirmed, with costs to respondent.

BURR, BURKE, NUESSLE, and BIRDZELL, JJ., concur.

CHRISTIANSON, Ch. J., did not participate, Hon. M. J. ENGLERT, Judge of the First Judicial District, sitting in his stead.